**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-10162

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AARON FERGUSON,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

May 4, 2000

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The defendant challenges the sufficiency of the evidence below and attacks the constitutionality of the federal "three strikes" sentencing provision. For the reasons assigned, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Because this case involves multiple robberies committed during a two-month robbery spree, we briefly summarize the facts surrounding the robberies.

I.      Robbery Spree

A.      Ramada Inn incident

On November 25, 1997, two men approached a clerk at a Ramada Inn Limited Motel located in Mesquite, Texas. The two men asked about room vacancies and rates, and the clerk told them to fill out a registration form. While the clerk was on the phone, the taller of the two men pulled out a gun and told the clerk to be quiet and hang up the phone. When the clerk did not comply, the man hung up the phone for her. The taller man with the gun told the clerk to hand over the money. The other man instructed the clerk to open the cash drawer. The taller man went over the counter and picked up the money, They then left in a white Nissan, driving west on I-30. The robbery was recorded on video tape by security cameras. The clerk at trial identified Ferguson as one of the men who robbed her. The clerk also testified that a gun that was recovered from Ferguson's home looked similar to the gun that was used during the robbery.

B.      Savings of America Bank

On December 1, 1997, a man approached a bankteller at a Savings of America Bank teller window in Dallas and demanded the teller to give him money. The robber stated "I have a gun in my pocket and don't make me use it." The teller stated that she never saw the gun. The teller gave him approximately $693, and the robber exited the bank on foot. Although the bank had surveillance cameras, there was no tape of the robbery. The teller identified Ferguson from a pretrial photo array, and at trial.

2

C      Owens Jewelry Store

On or about December 3, 1997, two men attempted to rob Owens Jewelry Store in Dallas. The robbers walked in, one asking to pawn a ring. When the attendant turn around, one of the robbers pulled out a gun and ordered the attendant on the floor. Another attendant went for a gun behind the counter and fired at the robbers. The robbers then exited the store taking nothing. Both attendants identified the weapon used by the robbers as a black Lorcin .380. One of the attendants stated that she did not get a good look at the robbers. The other stated that he also did not get a good look but could possibly identify the robbers if he saw them again. However, at trial he was unable to positively identify Ferguson as one of the robbers.

D.      Alrenco incident

On December 8, 1997, a man entered an Alrenco Store in Dallas with a gun in his hands and told one of the salesperson to empty the cash drawer. The robber also demanded the salesperson to give him a tray of men's rings. The robbers took the rings and approximately $325, ordered everyone on the floor, and exited the store. The store-manager testified that the gun the robber used was a automatic pistol with a dark blue finish. Approximately one month after the robbery, the store-manager identified Ferguson from a pretrial photo array. At trial, the store-manager identified the weapon seized from Ferguson's apartment as being the same type that was used during the robbery. Although the trial occurred approximately one year after the robbery, the store-manager, when asked to identify the robber in the courtroom, pointed to Ferguson and stated, "that looks like the gentleman right there."

3

E.    Guardian Savings Bank incident

On December 22, 1997, a bank official at Guardian Savings Bank in Dallas, Texas, received a phone call from a man stating that he was interested in purchasing a certificate of deposit for a Christmas gift. After a short discussion, the man stated that he would be in later that afternoon. Later that day a man, later identified as Ferguson, came to the bank and the teller buzzed him in. The man sat down, placed a large black bag on the desk, and stated "don't make me have to use this." While patting his belly, he further stated "do we understand each other." When the teller hesitated, the man repeated, "Don't make me have to use this, do we understand each other." The teller gave the robber $2,965. The teller also noted small cuts on the robbers hands. The robber took the money and exited the bank. Surveillance cameras recorded the robbery. The teller was unable to give a positive identification of the robber from the photo array. Also, when the teller was asked at trial could she identify the robber in the courtroom, she stated, "No I don't think so." However, Ferguson's wife identified him as the robber on the surveillance video tape. She also testified that Ferguson was wearing bandages on his hands during the time frame of the robbery.

F.    Rams Liquor Store incident

On January 2, 1998, two men pulled up in front of Rams Liquor Store in Dallas in a mid-size white car with no front license plate. The two men asked the clerk if he would cash checks for them. The clerk replied that he did not cash checks. One of the robbers then said, "Okay this is a holdup. Give me all your money." The clerk raised his hand, and one of the robbers took all of the money from the cash drawer. The robbers then exited the store. The store's surveillance camera captured the robbery. Ferguson's wife identified him in the surveillance tape. Although the clerk was unable

4

to make a positive identification from the pretrial photo array, the clerk nonetheless, identified Ferguson at trial.

### E. Hits Record Store incident

Approximately two days later on January 5, 1998, two men drove in a white car without a front license plate to Hits Records store in Dallas. The robbers left the car and went into the music store asking to see a compact disc ("CD"). When the clerk retrieved and rang the disc up on the cash register, one of the robbers pulled a gun from his back pocket and told the clerk to open the cash register. The robber took the money from the register and asked for more money. The clerk replied that there was no more money. The robber then asked about a safe, and the clerk responded that there was no safe. Afterwards, the robber threatened the clerk with the gun and told him to lie down on the floor. The robbers then left the store. When the officers arrived, it was discovered that in addition to the $35 taken, the robbers also took ten CDs. The police also traced the white car to Ferguson, and proceeded to his residence. They arrested Ferguson on a warrant for outstanding parking tickets. The search of his apartment yielded the CDs that were taken from the store, and a black Lorcin .380 pistol. Ferguson's wife stated that he picked her up in a white Nissan the day of the robbery, which had no front license plate.

## II. Indictments, Trial, and Sentencing

On August 4, 1998, the government charged Ferguson in a sixteen count indictment with Hobbs Act robbery (18 U.S.C. § 1951(a)), carrying a firearm during the commission of a crime of violence (18 U.S.C. § 924(e)(1)), and bank robbery (18 U.S.C. § 2113(a) and (d)). In October, the government filed a superceding indictment charging Ferguson with seven counts of Hobbs Act robbery, eight counts of carrying a firearm during the commission of a crime of violence, two counts

5

of bank robbery, and one count of being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and 924 (e)(1)).

The government also filed notice advising that Ferguson was eligible for a mandatory life sentence pursuant to the federal "three strikes"sentencing provision (18 U.S.C. § 3559) based on Ferguson's convictions for "serious violent felonies" in 1977, 1984, and 1985.[1]

In November 1998, the morning of trial, the government moved to dismiss counts 1-4 of the superseding indictment and tried Ferguson on the remaining counts. The jury returned guilty verdicts for all counts except nine and ten (Owens Jewelry Store incident). Ferguson moved for a directed verdict of acquittal, which was denied.

For the Hobbs Act and bank robbery convictions, the court sentenced Ferguson to life imprisonment for each count to run concurrently with each other and with the sentence for the felon in possession of a firearm conviction. Regarding the possession of a firearm during a crime of violence conviction, the court sentenced Ferguson to life imprisonment for each count to run consecutively to each other and to the life sentences for the Hobbs Act and bank robbery convictions. As to the remaining conviction for felon in possession of a firearm, the court sentenced Ferguson to fifteen years in imprisonment, with five years supervised release, and imposed restitution in the amount of $11,500 and $1,200 mandatory special assessment.[2]

---

[1] In 1977, Ferguson was co nvicted in federal district court of bank robbery. In 1984 and 1985, Ferguson was convicted in Texas district court of aggravated robbery with a dangerous weapon.

[2] The record reflects that there is a discrepancy between the oral pronouncement of sentence and the written judgment. The written judgment omits the sentence for count eighteen (felon in possession of firearm). The written judgment also ordered count eighteen to run consecutively, rather than concurrently, with the sentences for the Hobbs Act and bank robbery counts. Nonetheless, "[i]n this Circuit, it is well settled law that where there is any variation between the oral and written

Ferguson attacks his convictions and sentences on several grounds. First, he claims that the jury convicted him on insufficient evidence. Furthermore, he contends that the government failed to produce sufficient evidence to trigger the interstate jurisdictional component under the Hobbs Act. Finally, he argues that the "three strikes" federal sentencing provision is unconstitutional. We address each of his arguments in turn.

## I.    Sufficiency claims

Ferguson moved for a judgment of acquittal at the close of the government's case, at the end of the trial, and after the verdict, thus preserving his sufficiency claims for appellate review. See United States v. Burns, 162 F.3d 840, 847 (5th Cir. 1998). We review a district court's denial of a motion for a judgment of acquittal de novo. Id.; United States v. Myers, 104 F.3d 76, 78(5th Cir.), cert. denied, 520 U.S. 1218, 117 S.Ct. 1709, 137 L.Ed.2d 834 (1997). In evaluating the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence in support of the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. Id. The jury is free to choose among reasonable constructions of the evidence and the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. See United States v. Resio-Trejo, 45 F.3d 907, 910 (5th Cir. 1995). If, however, the evidence gives equal or nearly equal circumstantial support

_____

pronouncements of sentence, the oral sentence prevails. See, e.g., United States v. Shaw, 920 F.2d 1225, 1230 (5th Cir. 1991).

7

to a theory of guilt, as well as to a theory of innocence, the conviction must be reversed. <u>United States v. Sanchez</u>, 961 F.2d 1169, 1173 (5th Cir. 1992).

A.      Savings of America and Guardian Savings Bank incident

To prove the offense of bank robbery, the government must demonstrate that: an individual or individuals used force and violence or intimidation to take or attempt to take from the person or presence of another money, property, or anything of value belonging to or in the care, custody, control, management or possession of any bank, credit union, or savings and loan association. 18 U.S.C. § 2113(a)("§ 2113(a)" or "bank robbery"); <u>see</u> <u>United States v. McCarthy</u>, 36 F.3d 1349, 1357 (5th Cir. 1994). The punishment may be enhanced when, in committing or attempting to commit the offense, the defendant assaults another person or puts in jeopardy the life of another person by the use of a dangerous weapon or device. 18 U.S.C. § 2113(d)("§ 2113(d)" or "aggravated bank robbery"). Section 924(c)(1) provides that a person who carries or "uses" a firearm "during and in relation to any [federal] crime of violence are subject to penalties additional to those imposed for the crime of violence itself." 18 U.S.C. § 924(c)(1)("§ 924(c)(1)").

Ferguson contends that the evidence was insufficient to establish that he actually possessed a gun during the bank robberies. Ferguson also maintains that the government failed to prove beyond a reasonable doubt that he "used" a firearm or dangerous device during the commission of the bank robberies. He points out that in both incidents, the robber merely mentioned that he had a gun. Furthermore, the bank tellers that testified stated that they never actually saw the robber handle a gun during the robberies. As such, Ferguson argues that the mere reference to a gun neither constitutes possession nor "use" under § 2113 (d) or 924(c)(1).

8

A bank robber who displays or brandishes a dangerous weapon or an object reasonably perceived to be a dangerous weapon or device during a bank robbery violates §2113(d). See United States v. S. Levi, 45 F.3d 453, 456 (D.C. Cir. 1995)(citing United States v. Ray, 21 F.3d 1134, 1140 (D.C. Cir. 1994)). A robber who does not display a dangerous weapon or an ostensibly dangerous weapon or device cannot be found guilty of aggravated bank robbery under §2113(d) unless the evidence establishes that he had a concealed weapon and that he used it in the course of the bank robbery. Id. In the present case, the tellers from Savings of America Bank and Guardian Savings Bank testified that the robber did not display or brandish a weapon. Thus, because the robber did not display a dangerous weapon, or an object that could reasonably be perceived to be a dangerous weapon, the evidence must demonstrate that Ferguson actually possessed a concealed dangerous weapon during the commission of the bank robberies in order to sustain the aggravated bank robbery convictions See Levi, 45 F.3d 546.(emphasis added).

The government asserts that when a defendant announces that he possesses a gun during a robbery, a jury may reasonably infer that the defendant actually possessed a gun. See United States v. Jones, 84 F.3d 1206, 1211 (9th Cir. 1996), United States v. Ray 21 F.3d 1134, 1141 (D.C. Cir. 1994). The Ray court found that the defendant's claim during a bank robbery that he possessed a gun could have supported a reasonable inference of possession even though none of the witnesses present saw a gun nor did the police recover the gun. Ray, 21 F.3d at 1141. In Ray, the defendant walked into the bank and stuck his hands in his pocket and told the cashier that he would "blow her head off" if she did not hand over the money. Id. 21 F.3d at 1135.[3] The court found that words or threats

---

[3]The court reversed the conviction because it found that the district court's instructions erroneously authorized the jury that under §2113(d), it could convict if the government proved that the defendant's acts or words could have caused a reasonable person to expect to die or receive

may be sufficient to establish that the defendant possessed and used a dangerous <u>weapon</u> under § 2113(d). <u>See</u> <u>Ray</u>, 21 F.3d at 1141.

Similar to the circumstances in <u>Ray</u>, Ferguson informed the bank tellers that he possessed a weapon. The teller from Savings of America Bank testified that the robber stated: "I have a pistol in my pocket and don't make me use it." The teller for the Guardian Savings Bank testified that the robber walked into the bank, sat a bag on the desk, patted his belly and stated, "don't make me have to use this"and "do we understand each other?" Ferguson's statements that he possessed a weapon are supported by additional evidence. It is undisputed that Ferguson used a weapon during the Ramada Limited Motel, Owens Jewelry, Alrenco, Rams Liquor and Hits Records robbery. Furthermore, the police found a black Lorcin pistol at Ferguson's apartment following the Hits Records robbery. Ferguson's own statements and this additional inculpatory evidence is enough for a rational jury to have determined that Ferguson possessed a weapon during the Savings of America and Guaranty Savings bank robberies. Thus, drawing all reasonable inferences in favor of the verdict we affirm the convictions for counts seven and thirteen of the superseding indictment and the corresponding convictions under § 924(c)(1) (use of a firearm during a crime of violence).

B       Alrenco incident

Ferguson claims that the evidence was insufficient to sustain the convictions on Counts 11 and 12 of the superceding indictment, which respectively charged him with (1) Hobbs Act robbery, 18 U.S.C. § 1951 (a), of Alrenco on December 8, 1997 and (2) using and carrying a firearm during and relation to that robbery, §924(c)(1). Specifically, Ferguson claims that the only witness the

---

serious injury by use of a dangerous weapon regardless of whether the defendant "actually had a weapon or other object, whether he displayed any object, or whether he could have carried out his threats." <u>Id.</u>, 21 F.3d at 1136.

government presented for these counts, Robert Snipes the store-manager (Snipes) was unable to positively identify him at trial.

Although an uncertain in-court identification will not support a conviction where that identification is the only evidence offered on the issue of identity, such tentative nature of an identification is not fatal if there is other sufficient evidence of identity." United States v. Guerrero, 169 F.3d 933, 941 (5th Cir. 1999) (internal citations and quotations omitted). Identity may be proved through inference and circumstantial evidence. Id.

During the government's case-in-chief, when asked if he recognized the robber in the courtroom, Snipes responded: "That could be him there, I guess, I know I recognized him that night. And when I did my lineup and they brought the pictures in, it was very close, looked just like the sketch I had done." The court permitted Snipes to leave the witness stand to get a closer view of Ferguson. Upon getting closer view, Snipes stated, "[t]hat looks like the gentleman right there. . ." We have recognized that "[i]t is a basic rule of evidence that witnesses need not assert that they are certain of their identification beyond a reasonable doubt." Id. (quoting United States v. Roberts, 481 F.2d 892, 893 (5th Cir. 1973)). Although Snipes did not identify Ferguson to an unyielding degree of certainty, his testimony was nonetheless sufficient to establish identity.

Furthermore, the government presented evidence to corroborate Snipes' testimony. First, Snipes identified Ferguson in pretrial photo line-up thirty days after the robbery. Snipes also identified the Lorcin .380 pistol that was recovered from Ferguson's residence as the same type of weapon displayed during the robbery. Ferguson's wife again buttressed the government's case when she corroborated Snipes' testimony regarding Ferguson's clothing and physical appearance by testifying that during the time period of the robbery, Ferguson had a short grey beard and sometimes

11

wore toboggans. Thus, we find that the evidence is sufficient to sustain the convictions for counts eleven and twelve of the superseding indictment.

C.      Felon in Possession of a Firearm

Ferguson argues that his conviction for count eighteen for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1),[4] cannot stand because this count corresponds with the Owen Jewelry robbery for which he was acquitted. Thus, he contends that his conviction amounts to an inconsistent verdict since the felon in possession of a firearm count and the Owens Jewelry robbery were alleged to have occurred on the same date. Count eighteen of the superseding indictment alleges that the illegal possession of the firearm occurred "on or about December 3, 1997," which coincides with the date of the Owens Jewelry store robbery.

This court has held that "the alleged time of the offense is not an essential element of the offense charged in the indictment." United States v. Powers, 168 F.3d 741, 746 (5th Cir. 1999); United States v. Bowman, 783 F.2d 1192, 1197 (5th Cir. 1986)(nine month variance between mailing date alleged in indictment and date to which witness testified at trial not fatal). "The prosecution is not required to prove the exact date alleged in the indictment; it suffices if a date reasonably near is established." Powers, 168 F.3d at 746 (internal citations and quotations omitted).

In addition to the robberies discussed above, Ferguson was convicted of armed robbery of a Ramada Inn on November 25, 1997 (counts five and six), armed robbery of a Rams Liquor store on January 2, 1998 (counts fourteen and fifteen), and armed robbery of a Hits Records store on January

---

[4] In order to convict one for felon in possession of a firearm, the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm." United States v. Ybarra, 70 F.3d 362, 365 (5th Cir. 1995); see 18 U.S.C. § 922(g)(1).

12

5, 1998 (counts sixteen and seventeen). Furthermore, shortly after his arrest on January 5, 1998, a dark automatic pistol was found in Ferguson's apartment.

In light of Powers, the additional evidence that Ferguson possessed a firearm close to the date charged in count eighteen is sufficient to sustain a conviction on that charge. Accordingly, we affirm the conviction for count eighteen

D.     Hobbs Act robberies and Impact on Interstate Commerce

In his final sufficiency claim, Ferguson contends that the government failed to produce sufficient evidence of "substantial effect" on interstate commerce with respect to the Hobbs Act convictions. Recognizing that we have rejected similar challenges to convictions under the Hobbs Act, Ferguson states that he raises this issue merely to preserve his claim for further review.

In a Hobbs Act prosecution, the government is required to prove that: 1) the defendant committed a robbery, and (2) that it interfered with interstate commerce. 18 U.S.C. § 1951(a); United States v. Robinson, 119 F.3d 1205, 1212 (5th Cir. 1997), cert. denied, 522 U.S. 1139 (1998).

An evenly divided en banc panel of this court in United States v. Hickman, 179 F.3d 230, 231 (5th Cir. 1999)(en banc) did not disturb previous circuit precedent which held that the aggregation principle is applicable to Hobbs Act prosecutions where the impact of individual robberies on interstate commerce is minimal. See United States v. Robinson, 119 F.3d 1205 (5th Cir. 1997), cert. denied, 522 U.S. 1139, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998). Our review of the trial transcript reveals that the government presented sufficient evidence to meet this de minimus impact requirement.[5] Thus, Ferguson's claim lacks merit.

_____

[5] With respect to evidence of de minimus impact on interstate commerce, the government presented the following evidence:
Count Five - Robbery of a Ramada Inn Limited Hotel - The Government elicited

13

II.     Constitutionality of the federal "three strikes" sentencing provision

Finally, Ferguson attacks the constitutionality of the federal "three strikes" sentencing provision. Specifically, he claims that the sentencing provision unconstitutionally shifts the burden of proof to the defendant to prove, by clear and convincing evidence, that his prior convictions did not involve the use or threatened use of a firearm or result in a death or serious bodily injury.

Because Ferguson did not raise this issue below, we review only for plain error. See United States v. Spires, 79 F.3d 464, 465-66 (5th Cir. 1996); see also United States v. Knowles, 29 F.3d 947, 950-51 (5th Cir. 1994) (alleged constitutional error in criminal conviction reviewed for plain error). Under FED. R. CRIM. P. 52(b), this court may correct forfeited errors only when the appellant shows the following factors: (1) there is an error, (2) that is clear or obvious, and (3) that affects his substantial rights. United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (citing United States v. Olano, 507 U.S. 725, 731-37 (1993)). If these factors are established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not

testimony that the hotel is located on a major interstate highway and that roughly 20% of the its customers are from out-of-state. The hotel also obtains food items and cleaning supplied from out-of-state.

Count Eleven - Robbery of Alrenco - The Government elicited testimony that the store purchases almost all of its inventory from out-of-state. In addition, Alrenco maintains operations in 30 states, with headquarters in Indiana.

Count Fourteen - Robbery of Ram's Liquor - The Government elicited testimony that the store carries items that come from out-of-state.

Count Sixteen - Robbery of Hit Records - The Government elicited testimony that the store's inventory comes from all over the world.
With respect to the felon-in-possession charge, the parties stipulated that the handgun had been transported in interstate commerce.

14

exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Olano, 507 U.S. at 735-36.

The three-strikes statute provides that "a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment" if he has been convicted on separate prior occasions of "2 or more serious violent felonies" 18 U.S.C. § 3559(c)(1). In a separate subsection, the statute provides that the offense of robbery:

> "shall not serve as a basis for sentencing . . . if the defendant establishes by clear and convincing evidence that--
> (1) no firearm or other dangerous weapon was used in the offense ...; or
> (2) the offense did not result in death or serious bodily injury ... to any person."

18 U.S.C. § 3559(c)(3)(A).

This circuit has not addressed the issue whether the statute violates due process by shifting the burden of proof to the defendant to prove that his prior robbery convictions are nonqualifying. This issue has, however, been addressed in two other circuits. See United States v. Kaluna, 192 F.3d 1188, 1196 (9th Cir. 1999) (en banc); United States v. Wicks, 132 F.3d 383, 387-89 (7th Cir. 1997).

In Kaluna, the Ninth Circuit stated that § 3559(c)(3)(A) "contains an affirmative defense to a sentencing enhancement, which Congress may require a defendant to establish." Kaluna, 192 F.3d at 1196 (internal citations omitted). Accordingly, the court held that due process does not prohibit the kind of affirmative defense found in § 3559(c)(3)(A). Id. Similarly, in Wicks, the Seventh Circuit rejected a due process challenge to the "three strikes" law and noted that "sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." Wicks, 132 F.3d at 388 (quoting McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). Likewise, we agree with the Seventh and Ninth circuits that the burden shifting provision

15

of the three strikes law does not violate due process, but rather is a valid exercise of Congress's plenary power to promulgate rules and procedures to govern the sentencing of persons convicted for violating federal criminal statutes. Although Ferguson cites Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 116 S.Ct. 1373 (1996)(holding that state statute requiring criminal defendant to prove lack of competency to stand trial by clear and convincing evidence violates due process), to argue that the clear and convincing standard of proof is constitutionally impermissible, nonetheless we are unpersuaded by Ferguson's argument. Generally, sentencing proceedings do not offer criminal defendants the same procedural safeguards as trials. See McMillan, 477 U.S. at 91, 106 S.Ct. at 2419 (sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all."); Williams v. New York, 337 U.S. 241, 250, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949) (Sentencing courts routinely rely on information that is inadmissible at trial); United States v. Carreon, 11 F.3d 1225, 1241 (5th Cir. 1994)(government may prove drug quantity during sentencing by preponderance of evidence); but see Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999)(defendant's guilty plea does not waive defendant's Fifth Amendment right against self incrimination during sentencing, nor can the judge draw an improper inference from the defendant's silence in determining facts related to sentencing). As such, we reject Ferguson's due process challenge to the "three strikes" provision.

CONCLUSION

For the above reasons, we AFFIRM all of the convictions and sentences.