United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 12, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-10943

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LORI KAY SPURLOCK; JERRY LEWIS POORE,

Defendants-Appellants.

Appeals from the United States District Court for the
Northern District of Texas, Dallas

Before JOLLY, DAVIS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

In 2004, a federal grand jury returned an 11-count indictment against Jerry Lewis Poore and Lori Kay Spurlock. Poore and Spurlock were each indicted on charges of conspiring to defraud the United States (Count 1), conspiring to commit bankruptcy fraud (Count 9), and concealing bankruptcy assets (Count 10). The government charged Poore alone with three counts of attempting to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

evade and defeat taxes (Counts 2, 4 and 7) and three counts of failing to file a tax return (Counts 3, 5 and 8). It charged Spurlock alone with concealing bankruptcy assets (Count 11). The government dropped one count (Count 6) on its own motion.

A jury found Poore and Spurlock guilty on all remaining counts. Poore was sentenced to 33 months' imprisonment followed by three years of supervised release, along with a concurrent sentence of 12 months' imprisonment followed by one year of supervised release. Spurlock was sentenced to 27 months' imprisonment followed by three years of supervised release. They were also ordered to pay, joint and severally, $164,002 in restitution.

Poore and Spurlock contest the sufficiency of the evidence on several of their convictions. Spurlock further argues that her conviction for conspiracy to commit bankruptcy fraud was based on time-barred evidence, and that she should not have been held jointly and severally liable for the full restitution amount. Finding sufficient evidence as to each contested conviction, and no merit in Spurlock's two independent arguments, we AFFIRM the judgments of the district court.

## I. BACKGROUND

The convictions relate to a printing and copying business Spurlock and Poore operated called Color Laser Institute ("CLI"). The incriminating facts generally fall under the categories of (1) tax fraud and evasion, and (2) bankruptcy fraud.

## A. Tax Fraud and Evasion

CLI had two business bank accounts at Bank One—one for operations and one for petty cash. Poore and Spurlock commonly would pay personal bills out of the operating account at Bank One, drawing checks for country club fees, mortgage payments, car payments, lawn service and a down payment on Poore's second home. CLI paid some employees in cash and did not pay taxes on those amounts.

While CLI's employees and accountant knew about the Bank One accounts, Spurlock and Poore also kept a secret account at Bank of America ("BofA") on which Poore was the sole signatory.[1] Checks written to CLI were often deposited there, and some companies wrote CLI checks to Poore personally, which were then deposited in this account. The defendants often used the BofA funds for personal expenses.

CLI's accountant, Michael Law, was hired to perform compilation services and create CLI's statements based on financial data provided to him. He was not hired to audit or verify the financial information he received. Law kept CLI's books on the accrual method, whereby income is counted when earned rather than collected, and expenses are counted when they are incurred rather than deducted.[2] When balancing the books for a company that uses

---

[1] While it is not entirely clear, it appears that the accountant, Michael Law, only knew of the Bank One operating account and was unaware of the Bank One petty cash account. That fact is unimportant to the issues at hand, so we focus on Law's ignorance of the BofA account.

[2] The alternative to the accrual method of accounting is the cash method. Under the cash method, sales and expenses are

the accrual system, sales should equal cash deposits plus the change in accounts receivable. If the formula does not work, at least one of the figures is wrong and must be adjusted to balance company books.

In 1999, Law began to notice that CLI's sales numbers were consistently higher than its recorded deposits in the Bank One operating account, and change in accounts receivable did not make up the difference. Toward the end of that year, Law asked Spurlock if all CLI's deposits were being made. Spurlock replied that they were and suggested that sales be adjusted downward to account for any discrepancy. The lower CLI's sales number, the less taxable income it had. Spurlock did not tell Law about the BofA account or the deposits made into it, which might have accounted for the discrepancies. Deposits into the BofA account totaled $34,205 in 1997, $198,736 in 1998, $329,893 in 1999 and $37,227 through August 2000.

There was significant disagreement at trial as to how many of CLI's BofA deposits had corresponding sales reports filed with Law.[3] These disputed reports are referred to here as the "BofA

recorded only when income is received and payments deducted.

[3] This dispute is significant because, under the accrual method of accounting, if all sales are reported then where the amounts are deposited *may be* irrelevant. However, when an accountant is checking the sales numbers against bank deposits and adjusting the numbers so they match—as was the case here when sales numbers were adjusted downward to match deposits—having accurate deposit reports is crucial under the accrual method.

4

sales figures". There is no dispute that Law did not have access to the BofA accounts or deposit slips, but the defense argued that the sales figures given to Law included all amounts deposited into the BofA account.

While prosecution witnesses suggested that BofA sales figures were regularly unreported, defense witnesses tried to interpret the data provided to Law as including the BofA sales figures. However, even the defense's fraud examiner testified that some of the checks deposited in the Bank of America account did not have corresponding sales information recorded in CLI's books.

A revenue agent testified that the payments to Poore funneled through the Bank of America account should have been recognized by him as income. The total income tax Poore should have paid, but did not pay for 1998 through 2000, was $93,243. Poore did not file any tax returns from 1992 to 2000. Spurlock filed no returns between 1993 and 1997. Her 1997 and 1998 returns were filed late in November 1999. No returns or extension requests were filed for 1999 or 2000.

B. Bankruptcy Fraud

In August 2001, Spurlock and CLI underwent bankruptcy proceedings. The bankruptcy court entered an order of relief freezing CLI's assets. Spurlock submitted schedules declaring her assets and liabilities. Spurlock listed assets of only $3,100 and liabilities of $412,991 and no income. She listed only one Bank

One account with a balance of $100. A bank statement for the CLI operating account showed a balance of $3,704 as of the date of the petition. Spurlock failed to list one of her homes, and listed no household goods and furnishings, no accounts receivable, no vehicles, and no business equipment or furnishings.

Spurlock did not provide Bank One statements for the period from August 22 through November 22, 2001. Those statements showed large balances and numerous deposits and withdrawals, even though the business had been frozen by that point. For instance, in September 2001, $11,000 was wire transferred to Spurlock's father. Spurlock instead provided the statement for November 23 to December 22, 2001, which showed a small balance due to large withdrawals and payments in previous months.

At a creditors' meeting, Spurlock stated under oath that the equipment CLI possessed was returned to the equipment's lender or owner. However, in 2001 Poore sold a Toyota van, production equipment, and three pallets of supplies such as paper and binders to Michael Buban, who owned a litigation support business and printing company that neighbored CLI. The equipment purchased by Buban was located on CLI's premises and was being used by CLI. A CLI employee testified that the equipment was of the type purchased and used by CLI. Payments for these items totaled approximately $50,000. Without the benefit of this information, the bankruptcy trustee concluded that there were no assets to distribute to

6

creditors and Spurlock was discharged.

## II.  ANALYSIS

Poore argues that there was insufficient evidence to support his convictions for (1) conspiracy to defraud the United States, (2) tax evasion and (3) conspiracy to commit bankruptcy fraud. Spurlock joins Poore's first argument and further alleges that her bankruptcy fraud conviction was illegal as potentially predicated on statements made outside the statutory period, and that the restitution order improperly imposed joint and several liability.

## A.  Sufficiency of the Evidence

In reviewing sufficiency claims, this court asks "whether, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence in support of the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000).

### 1.  Conspiracy to Defraud the United States

Spurlock and Poore both argue that there was insufficient evidence supporting their convictions for conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The elements of the offense are "(1) an agreement between two or more persons to pursue an unlawful objective, (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy,

7

and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005).

The indictment set forth the manner and means of the conspiracy as follows:

1.   The defendants concealed income to CLI by diverting CLI receipts into the bank account at Bank of America.
2.   Thereafter the defendants failed to record these receipts on the books and records of CLI.
3.   The defendants used these funds for living expenses and the acquisition of personal assets.
4.   The defendants knowingly failed to file tax returns with the Internal Revenue Service to report this taxable income.

Poore and Spurlock argue that the second prong was not proven, as there was significant testimony indicating that all of the BofA sales figures were recorded on CLI's books.

A review of the record reveals that the evidence supporting the verdict on this charge was more than sufficient. While there was conflicting evidence regarding whether the BofA sales figures were recorded on CLI's books, "[t]he jury is free to choose among reasonable constructions of the evidence." Ferguson, 211 F.3d at 832. Here, the jurors may have credited the testimony of Silverman, the prosecution's auditor, who indicated that a number of deposits to the BofA account were not accounted for in the sales figures provided to Law. The defendants' fraud examiner similarly noted certain deposits in the BofA account that he could not find

8

a corresponding sales receipt for. While he suggested that the slips may have been lost or misplaced by Law, the jurors were not obligated to credit such hypothetical explanations. Considering that Poore and Spurlock kept a BofA account hidden from Law, had customers write checks to Poore personally, and used BofA funds for significant personal expenditures, a reasonable jury could have concluded that Poore and Spurlock conspired to underreport CLI's sales.[4]

Moreover, even if all of the BofA sales figures were reported to Law, the evidence was still sufficient to convict Poore and Spurlock on this count. This is what government witness Silverman was suggesting when he stated, as appellants repeatedly stress, that "I give you the fact that [the BofA sales figures] may have even all been reported by CLI." He was not recanting his testimony as to the numerous BofA sales figures that went unreported, but merely posing a hypothetical that even in such an event the evidence still supports a finding of conspiracy to defraud.

We agree with Silverman, and disagree with Poore's argument that, "[i]f the income (the sales) is being regularly reported to the accountant[,] and if it appears on the books of CLI, then there is no concealment or attempt to conceal these assets." By not

---

[4] While general manager Marco Nunnerly indicated that he recorded all payments he received on CLI's books, he also testified that Lori Spurlock would occasionally open up company checks outside of his presence and take them to Poore. There was no indication that these checks were ever recorded.

providing Law with the BofA account, and by instructing Law to adjust sales downward in the face of sales/deposits discrepancies, a reasonable jury could have found that those were overt acts aimed at concealing income and defrauding the United States of tax revenue. Especially where, as here, the sales data was provided in a rather sloppy and incomprehensive form, making an accountant especially likely to rely on the deposit numbers.

This is what Silverman meant when he explained that Law would have expected that all deposits were made to the operating Bank One account, and "not knowing where all those bank accounts are, or whether they exist, he can't properly do a tax return that reflects the correct income." Providing an accountant with sloppy sales data without the appropriate deposit numbers to compare it against, and then advising a downward adjustment to the sales numbers is one method of fraud consistent with the first "manner and means" alleged in the indictment.[5] That provides sufficient evidence to

_____

[5] Appellants also argue that the proof at trial was at fatal variance with the indictment. A variance occurs when the charging terms of an indictment remain unaltered but the evidence at trial proves facts other than those alleged. *United States v. Puig-Infante*, 19 F.3d 929, 935 (5th Cir. 1994). The appellants argue that the government's theory on this count changed when it failed to show that CLI was not reporting all of its income and instead attempted to show that it failed to file 1099s, W-2s and K-1s. But "the government is not limited to the overt acts pleaded in the indictment in proving a conspiracy, but may show other acts of conspirators occurring during its life." *United States v. Carlock*, 806 F.2d 535, 550 (5th Cir. 1986). A fatal variance only occurs when the indictment does not provide a defendant sufficient notice of the evidence introduced at trial. Here, where the indictment charges Poore and Spurlock with

10

uphold the convictions on this count.

*2. Tax Evasion*

Poore alone was charged with and convicted of tax evasion. To establish tax evasion, there must be a tax deficiency and an affirmative act taken as a willful attempt to evade or defeat the tax. *United States v. Bishop*, 264 F.3d 535, 550 (5th Cir. 2001). Poore does not contest that there was a tax deficiency, but argues that he made no willful attempt to evade the taxes. The failure to file a tax return, even if willful, is insufficient to sustain a conviction for tax evasion. *United States v. Doyle*, 956 F.2d 73, 75 (5th Cir. 1992).

This court has pointed to a "wide range of conduct" that supports finding a willful attempt to evade taxes:

> [K]eeping a double set of books, making false entries or alterations, creating false invoices or documents, destroying books or records, concealing assets or covering up sources of income, handling one's affairs to avoid making the records normally accompanying transactions of a particular kind, any conduct likely to mislead or conceal, holding assets in others' names, providing false explanations, giving inconsistent statements to government agents, failing to report a substantial amount of income, a consistent pattern of underreporting large amounts in income, or spending large amounts of cash that cannot be reconciled with the amount of reported income.

*Bishop*, 264 F.3d at 550. Contradicting Poore's argument that the

concealing income and failing to file tax returns, they had sufficient notice that their failure to file financial documents in relation to CLI, such as W-2s, could be an issue.

11

government showed nothing more than a failure to file a tax return, the evidence at trial demonstrated that Poore used several of the tactics supporting willful tax evasion listed in *Bishop*. He concealed assets using the BofA account, used the BofA funds for personal expenses, handled affairs in cash to avoid making records, and repeatedly failed to report large amounts of income. The activities are comparable to those in *Bishop*, where this court found the defendant "deposited [substantial sums] in his personal account. . . . [and] gave inaccurate and misleading information to his return preparers." *Id.* at 552.

Based on this evidence, a rational juror could have found that Poore took a number of actions that constituted a willful attempt to evade or defeat certain taxes.

*3. Conspiracy to Commit Bankruptcy Fraud*

Poore also contests the sufficiency of the evidence supporting his conviction for conspiracy to commit bankruptcy fraud. It is uncontested that Poore sold a Toyota van, production equipment, and three pallets of supplies to Michael Buban while bankruptcy proceedings against Spurlock and CLI were underway. Poore argues that this activity could not support his conviction because (1) he was not a party to Spurlock's bankruptcy proceeding, and (2) the sold items were his own property.

First, one need not be the named party in a bankruptcy

12

proceeding to be guilty of conspiring to commit bankruptcy fraud. *See* 18 U.S.C. § 152(1). To support a charge of conspiracy, all that must be shown is that there are two or more people with an unlawful purpose, the defendant's knowledge of that purpose, and an overt act in furtherance of it. 18 U.S.C. § 371.

Second, there was sufficient evidence to find the items Poore sold to Buban did in fact belong to CLI's estate. The machinery and copy supplies were of a type normally used in CLI's business operations; a CLI employee, Brandy Arney, testified that he purchased some of the equipment; the equipment was all located on CLI's premises; and CLI depreciated such equipment in its taxes. Given these facts, and considering that the timing of this large sale coincided with the initiation of bankruptcy proceedings, the jury could reasonably have inferred that Poore and Spurlock conspired to conceal property of CLI's estate.

## B. Spurlock's Conspiracy to Commit Bankruptcy Fraud Conviction

Spurlock raises a separate argument concerning her conviction for conspiracy to commit bankruptcy fraud. The conspiracy indictment listed two objects: (1) concealing property belonging to the debtor estate and, (2) knowingly making "a false statement or declaration under penalty or perjury in relation to a bankruptcy case under Title 11." Spurlock argues that her conviction may have been based on the conspiracy's second object of knowingly making a false statement, and that the indictment—referencing only

13

a false statement and a bankruptcy case—made it possible for the jury to render its verdict based on evidence of statements made in bankruptcy proceedings from 1993 or 1995. Such a verdict would be barred by the applicable statute of limitations. The district court denied Spurlock's motion for acquittal and we review the denial of a motion for acquittal *de novo*. *Ferguson*, 211 F.3d at 882.

We need look no further than the indictment to dismiss Spurlock's argument. Consider the disputed paragraph of this indictment in its entirety:

> *Beginning in or about August 2001 and continuing through in or about March 2002*, the exact dates being unknown to the Grand Jury, in the Northern District of Texas and elsewhere, the defendants Jerry Lewis Poore and Lori Kay Spurlock, aided and abetted by each other, knowingly and willfully combined, conspired, confederated, and agreed with each other to commit certain offenses against the United States, namely: in a bankruptcy case filed under Title 11 of the United States Code, knowingly and fraudulently conceal from creditors and the United States Trustee property belonging to the estate of the debtor, in violation of 18 U.S.C. § 152(1); and (b) knowingly make a false statement or declaration under penalty of perjury in relation to a bankruptcy case under Title 11, in violation of 18 U.S.C. § 152(3).

(Superseding Indictment, Count 9) (emphasis added). It is clear from this language that the indictment alleges that false statements were made roughly between August 2001 and March 2002. Spurlock reads the paragraph's opening language limiting the time frame of the offense as applying only to the concealment object of the conspiracy, leaving the false statement object entirely without

14

time constraints.  This reading is curious and unsupported.

A more natural reading of the indictment is that everything prior to "namely:" constrains each of the two objects that follow.[6] The district court, therefore, properly denied the motion for judgment of acquittal.

## C.  The Restitution Order

Finally, Spurlock argues that the district court erred in ordering her to pay, jointly and severally with Poore, a total of $164,002 in restitution to the IRS and a defrauded bankruptcy trustee.  Spurlock did not challenge the restitution order in the district court, therefore this court reviews for plain error. *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).

Spurlock does not contest the propriety of a restitution order *per se*, but argues that she is less culpable than Poore and therefore should be responsible for less than the full amount. Spurlock was convicted of conspiring to defraud the United States and conspiracy to commit bankruptcy fraud.  If a defendant contributes to the loss of each victim, "the court may make each defendant liable for payment of the full amount of restitution or *may* apportion liability among the defendants to reflect the level

---

[6] It is admittedly peculiar that the false statement object is preceded by a "(b)" while the concealment object lacks a corresponding "(a)", but that is without consequence.  It does not affect the opening language that limits the jury to considering false statements made from 2001-2002.

of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h) (emphasis added). This Court has previously upheld the imposition of joint and several liability among multiple defendants. *See, e.g.*, *United States v. Chaney*, 964 F.2d 437, 454 (5th Cir. 1992).

Spurlock relies on facts indicating that Poore was her superior at CLI, and that he was abusive in their personal relationship. This, she argues, makes her less culpable than Poore and should reduce the amount of restitution she is responsible for. While evidence of Poore's superior status at CLI and of his abusive behavior might make him more culpable — and a judge could have held him liable for a greater amount than Spurlock — we cannot say that it was plain error for the district court to hold Spurlock equally liable. The proper question is not whether she is more or less culpable than Poore, but whether she contributed to each of the losses the victims incurred. Here, she conspired in the schemes that damaged the IRS and bankruptcy trustee, thereby allowing her to be held fully liable for the damages they incurred.

### III. CONCLUSION

The judgments of the district court are AFFIRMED.

16