REVISED MAY 28, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

May 1, 2008

Charles R. Fulbruge III
Clerk

No. 05-20712

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

v.

KEITH RAYE REED,

                                    Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CR-429

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

    A jury found Keith Raye Reed guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). As an armed career criminal under 18 U.S.C. § 924e(1), he was sentenced by the district court to 212 months in prison followed by five years of supervised release. He appeals his conviction and sentence, challenging the sufficiency of the evidence, the district court's admission of a statement he made to an arresting officer, and the denial

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of his Batson motion. For the reasons discussed below, we affirm.

## I. Background

Reed and two co-defendants, Eric Bolden and Larry Bushnell, were tried before a jury on November 30 and December 1, 2004. A third co-defendant, Larry Solomon, pleaded guilty the day before trial.

### A. Jury Selection and the Batson Challenge

During jury selection, five African-American jurors were struck from the venire panel. The government struck two; the record does not indicate who struck the other three. After the announcement of the petit jury panel, defense counsel made a joint Batson challenge to its composition. The government responded by stating that one of the African-American venire members had indicated that "he didn't really want to be here because . . . he was missing work" and that the other had said that "he had a problem with the Harris County Sheriff's officers . . . ." Thereafter, defense counsel responded, "[o]kay"; the court asked if there were any other challenged strikes; and after defense counsel said, "[t]hat's all," the court overruled the Batson motion.

Later at trial, following the government's case-in-chief, Bolden's counsel clarified for the record that "the jury panel ha[d] no African-Americans . . . ." The district court remarked that "[t]here were black venire men. And the five jurors whom we discussed . . . were all black. The defendants are black. The two prosecutors are black. What else do we need?" Bolden's counsel replied, "[n]othing," and the court said, "[o]kay."

### B. The Evidence Admitted at Trial

At trial, Reed stipulated that he was a convicted felon and that the firearm in question had traveled in interstate commerce. Therefore, the only issue was whether he possessed the firearm. To prove this element, the government called Rolanda Bushnell, Officers Pat Siddons and Preston Moore, and a fingerprint

examiner, Michael Salvidar.[1]

Rolanda Bushnell testified that on June 21, 2004, she parked a rented jeep at her residence where her brother, Larry Bushnell, and the other co-defendants were present. According to Rolanda Bushnell, the vehicle contained no firearms when she left the keys in it, and she did not drink Crown Royal. At some point that afternoon, Reed, Larry Bushnell, Bolden, and Solomon borrowed the jeep.

Meanwhile, Officer Siddons testified that around 6:00 p.m. that same day, he responded to an incident in the Fifth Ward area of Houston, Texas. There he stopped a jeep that was speeding toward him by blocking its path and pointing his weapon at the occupants. Officer Moore arrived on the scene less than a minute thereafter.

Siddons further testified that after the jeep stopped, he instructed the four occupants to raise their hands. The driver, Bolden, and the front-seat passenger, Reed, did not immediately comply. Instead, they both "dropped their hands down into the floor board area of the vehicle." Only after Siddons repeatedly demanded that the two men raise their hands did they comply.

According to Siddons, after back-up officers arrived one or two minutes later, Reed was removed from the jeep, handcuffed, and placed in the back of Siddons's patrol car. Upon taking Reed into custody, Siddons discovered a "blue velvet Crown Royal bag that was in plain view in the [front] passenger floor board area" near Reed's feet. Inside the bag was a .357 revolver. Siddons placed both the revolver and the Crown Royal bag in Moore's patrol car.[2]

Siddons found three additional firearms on the floor board in the back seat of the jeep—one on the rear floor board near Larry Bushnell (who was sitting behind Reed) and the other two on the rear floor board near Solomon (who was sitting behind Bolden). Moore testified that he found a fifth firearm on the front

---

[1] Salvidar testified generally about the ability to lift fingerprints from firearms and about his inability to lift any identifiable prints in this case.

[2] The Crown Royal bag was not produced at trial.

floor board on the driver's side where Bolden was seated. All of these weapons were placed in Moore's patrol car.

On redirect examination, Siddons testified that after Reed was removed from the jeep, Reed told him that "he had just been robbed and that he was trying to keep the other guy from killing him—or keeping the other guy from killing a person." Reed's defense counsel objected to the admission of this statement on the grounds that it was irrelevant and beyond the scope of Siddons's direct testimony, and the district court allowed the evidence to come in, stating "nothing outside of cross after this."

Reed's defense consisted of testimony by his co-defendant, Solomon. Solomon testified that all five firearms belonged to him, and that when the jeep was stopped by police, all five firearms were near him on the rear floor board. He also testified that he did not have a Crown Royal bag and that he did not slide anything under the seat.

C.     The Verdict and Reed's Sentence

At the conclusion of the trial, the jury found Reed guilty of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and Bolden and Larry Bushnell guilty of their respective charges. As an armed career criminal under 18 U.S.C. § 924e(1), Reed was sentenced by the district court to 212 months in prison and five years of supervised release on August 15, 2005. He appeals.

## II. Discussion

Reed argues that: (1) the evidence was insufficient to support a jury finding that he possessed a firearm beyond a reasonable doubt; (2) the district court abused its discretion in admitting testimony on redirect examination regarding a statement he made to Siddons during the arrest; and (3) the district court clearly erred in denying his Batson challenge to the government's peremptory strikes.

A. Sufficiency of the Evidence

This court "review[s] a district court's denial of a motion for a judgment of acquittal de novo." United States v. Ferguson, 211 F.3d 878, 882 (5th Cir. 2000). In evaluating whether the evidence was sufficient to convict Reed, the court "must determine whether, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence in support of the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." Id. "The jury is free to choose among reasonable constructions of the evidence and the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." Id. "If, however, the evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence, the conviction must be reversed." Id. at 882–83.

To establish a violation of 18 U.S.C. § 922(g)(1), the government had the burden to prove three elements beyond a reasonable doubt: (1) that Reed had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. United States v. Fields, 72 F.3d 1200, 1211 (5th Cir. 1996). Because the parties stipulated that all of the firearms were manufactured outside of Texas and that Reed was a convicted felon, Reed's challenge to the sufficiency of the evidence pertains only to the second element.

Possession of a firearm may be actual or constructive. United States v. De Leon, 170 F.3d 494, 496 (5th Cir. 1999). "Actual possession means the defendant knowingly has direct physical control over a thing at a given time." United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998). "Constructive possession means ownership, dominion or control over a thing, or control over the premises where the thing is found." Id. When there is joint occupancy or presence at a location in which a weapon is found, such as here, this court applies a "'commonsense, fact-specific approach' [in] determining whether constructive

possession was established." United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993) (quoting United States v. Smith, 930 F.2d 1081, 1086 (5th Cir. 1991)). The evidence must support "at least a plausible inference that the defendant had knowledge of and access to the illegal item." United States v. Hinojosa, 349 F.3d 200, 204 (5th Cir. 2003) (internal quotation marks and citation omitted).

"[M]ore evidence than mere physical proximity of the defendant to the [firearm] is required." United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992) (citation omitted). Nor is evidence that the defendant operated the vehicle, eluded the police, and made furtive movements near the location of the firearm, by itself, sufficient to establish constructive possession. See United States v. Wright, 24 F.3d 732, 735 (5th Cir. 1994). "[W]hile dominion over the vehicle certainly will help the government's case, it alone cannot establish constructive possession of a weapon found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon." Id. Rather, "something else (e.g., some circumstantial indicium of possession) is required besides mere joint occupancy . . . ." Mergerson, 4 F.3d at 349.

Applying these principles to the present case, the evidence was sufficient to establish that Reed constructively possessed the .357 revolver. First, Rolanda Bushnell testified that Reed and his co-defendants borrowed the car with no firearms inside it. Second, Siddons testified that when he stopped Reed, he observed both Reed and the driver reach towards the floor board (where both Reed and the driver had access to firearms). Third, when Reed was removed from the vehicle, the .357 revolver was found at his feet inside a Crown Royal bag. Finally, Solomon testified that he did not kick any firearms under the seat or hide any firearms in a Crown Royal bag.

Reed argues that this evidence, by itself, cannot establish constructive possession, particularly in light of the countervailing evidence (1) that the .357 revolver was not in plain view but inside the Crown Royal bag; (2) that there was

no evidence that Reed handled the .357 revolver or the Crown Royal bag or had placed either in the jeep; and (3) that Solomon testified that all five guns belonged to him. Reed further argues that his statement regarding a robbery, as testified to by Siddons, is unclear; that nothing links the .357 revolver to a robbery or to Reed's unspecified efforts to keep someone from getting killed; and that any inference from the statement to a conclusion that Reed had knowledge of the .357 revolver is too remote.[3]

Contrary to Reed's argument, his statement to Siddons constituted the requisite "circumstantial indicium of possession"—the "something else . . . besides mere joint occupancy"—that, when taken together with the evidence of Reed's proximity to and furtive movements toward the .357 revolver, sufficiently proved constructive possession. He told Siddons that "he had just been robbed and that he was trying to keep the other guy from killing him—or keeping the other guy from killing a person." This statement, when viewed in the light most favorable to the verdict, indicated that Reed had knowledge of the .357 revolver and a self-defense or defense-of-others motive for possessing it.

At the same time, Solomon's testimony regarding all five firearms being near him on the rear floor board was contradicted by Siddons's and Moore's testimony regarding where they found the firearms. After hearing this conflicting testimony, the jury was free to choose among reasonable constructions of the evidence. See United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999) ("We determine only whether the jury's decision was rational without passing on whether . . . we believe it was the correct one . . . [and] therefore must view the evidence in the light most favorable to the jury's verdict

---

[3] Reed also asserts that the subsequent disappearance of the Crown Royal bag means that the jury was never provided an opportunity to consider the actual evidence against him, and that as a result, the jury could not have found that he possessed the .357 revolver beyond a reasonable doubt. The trial testimony regarding the Crown Royal bag, however, was relevant only to show that the .357 revolver was not in plain view, a fact that does not alter the outcome of the analysis here.

without second-guessing the weight or credibility given the evidence by the jury."). In addition, Solomon's alleged ownership of the firearms did not prevent Reed from constructively possessing the .357 revolver during the incident at issue. Accordingly, the evidence was sufficient to support the jury's finding that Reed possessed a firearm beyond a reasonable doubt.

## B. Admission of Reed's Statement

Reed's challenge to the admission of his statement on Siddons's redirect examination is reviewed for abuse of discretion. See United States v. Insaulgarat, 378 F.3d 456, 464 (5th Cir. 2004). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." Id. (citation omitted). It is generally true, as Reed argues, that the scope of cross examination cannot exceed the scope of direct examination, id. at 465 n.12, and that this principle applies to redirect examination as well. See United States v. Reliford, 210 F.3d 285, 305 (5th Cir.), vacated on other grounds sub nom. Clinton v. United States, 531 U.S. 920 (2000).

Federal Rule of Evidence 611(a), however, provides the district court with substantial discretion to manage the examination of witnesses at trial:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

FED. R. EVID. 611(a). Here, the district court properly exercised its discretion under Rule 611(a) to allow the prosecutor, on redirect examination of Siddons, to inquire into the statement made by Reed that "he had just been robbed and that he was trying to keep the other guy from killing him—or keeping the other guy from killing a person." See also Feutralle v. United States, 209 F.2d 159, 162 (5th Cir. 1954) ("Considerable discretion is allowed the trial court in the manner in which the examination of witnesses shall be conducted.").

Indeed, Reed cites no authority to the contrary.[4] He suggests instead that the probative value of the statement was outweighed by the prospect of confusion and prejudice. See 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 611.03[4](a) (2d ed. 1997) (explaining that under Rule 611, a district court balances "the factors of prejudice, confusion, and delay against the probative value of the testimony" in deciding whether to limit cross examination). But that argument, too, is unavailing. Reed's statement was highly probative because it indicated that he had knowledge of the .357 revolver and a motive for possessing it; and admission of the statement was not overly prejudicial or confusing because it provided no detailed insight or unnecessary digression into the events that occurred before the police arrived (discussion of which the district court had prohibited) beyond a basis for that knowledge and motive.[5] Accordingly, the district court properly exercised its discretion in admitting Siddons's testimony on redirect examination regarding Reed's statement.

## C. Batson Challenge

The district court's denial of Reed's Batson challenge is reviewed for clear error and "is entitled to great deference, since findings in this context largely turn on an evaluation of the credibility or demeanor of the attorney who exercises the challenge." United States v. Bentley-Smith, 2 F.3d 1368, 1372–73

---

[4] Reed's reliance on Federal Rule of Evidence 611(b) is misplaced. Although the rule provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness," it also contains the caveat that "[t]he court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." FED. R. EVID. 611(b). If the court has such discretion on cross examination, then it follows logically that the court has similar discretion on redirect examination.

[5] The government also points out that, even if it had not offered this testimony during its case-in-chief, it could have waited until its rebuttal case, called Siddons back to the stand, and used the testimony to rebut Solomon's testimony that he possessed all five firearms. Accordingly, efficiency interests support the district court's exercise of discretion to permit the challenged testimony on redirect examination as well.

(5th Cir. 1993).

"[A] prosecutor violates the equal protection clause when he strikes veniremen of the defendant's race based on the assumption that they would be lenient toward the defendant because of race." United States v. De La Rosa, 911 F.2d 985, 990 (5th Cir. 1990). Batson v. Kentucky, 476 U.S. 79 (1986), sets forth a three-step inquiry for a defendant's challenge to a peremptory strike based on race. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" Johnson v. California, 545 U.S. 162, 168 (2005) (quoting Batson, 476 U.S. at 93–94). "Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." Id. (quoting Batson, 476 U.S. at 94). "Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'" Id. (quoting Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam)).

Here, the government concedes that "the district court found that the defendants met the first prong." The burden thus shifted to the prosecutor to come forward with a race-neutral explanation for each strike. Id. at 168. The Supreme Court has explained that:

> [a] neutral explanation . . . means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

Hernandez v. New York, 500 U.S. 352, 360 (1991). The government met this burden when it explained that one of the African-American venire members had indicated that "he didn't really want to be here because . . . he was missing work"

and that the other had said that "he had a problem with the Harris County Sheriff's officers"—reasons that facially had nothing to do with race.[6]

As a result, the issue centers on the third step—whether the district court decided if Reed had proved purposeful racial discrimination. Johnson, 545 U.S. at 168. On this point, Reed argues that "the record is completely barren of any reasoning or analysis by the district court, which simply declared the Batson challenges overruled," and that therefore the court "fail[ed] to adhere to its obligation . . . and failed to apply the correct legal standard to determining the challenge to the . . . peremptory strikes." In addition, Reed asserts that "the district court actually substituted its own (inadequate) reasons for those the Government offered."

These arguments lack merit. First, after the prosecutor offered the race-neutral justifications for the strikes, defense counsel responded, "[o]kay." The court then asked if there were any other challenged strikes; and after defense counsel said, "[t]hat's all," the court overruled the Batson motion. With this concession and with no additional evidence of discrimination, the district court's overruling of the Batson motion adequately conveyed its decision that Reed had failed to prove purposeful racial discrimination, and Reed has not cited any authority that requires a more specific, express indication of that decision beyond what was given.

---

[6] Although Reed asserts that the government misquoted the prospective jurors when explaining its non-discriminatory reasons, the record indicates that the prosecutor fairly paraphrased their statements. In addition, although Reed argues that the Supreme Court's recent decision in Snyder v. Louisiana, 128 S. Ct. 1203 (2008), illustrates the inadequacy of the government's proffered reasons, that case is distinguishable. In Snyder, the Court held that the prosecutor's proffered reasons for striking an African-American juror were pretext for racial discrimination. Id. at 1212. The first reason, the juror's nervousness, was insufficient by itself because the record materials could not convey the juror's demeanor absent a specific finding by the trial judge; and the second reason, the juror's student-teaching obligations, failed because it appeared speculative and implausible in light of the brevity of the trial and of the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appeared at least as serious. Id. at 1209–12. Here, however, neither of the government's proffered reasons centered on a juror's demeanor or appeared implausible in comparison with accepted jurors' responses.

Second, Reed's characterization of the district court substituting its own race-neutral reasons for those of the government is inaccurate. By the time Bolden's counsel, following the government's case-in-chief, clarified for the record that "the jury panel ha[d] no African-Americans," the district court had long concluded the Batson analysis and overruled the motion. Reed cannot challenge that ruling now based on the district court's comments later in the proceeding. Accordingly, the district court properly denied Reed's Batson challenge to the government's peremptory strikes.

## III. Conclusion

Finding the evidence sufficient to support Reed's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and finding no error in the district court's challenged rulings, we AFFIRM.