**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-20853**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**GILBERT CABALLERO YBARRA,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

November 22, 1995

Before KING, DeMOSS and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

This is an appeal from a conviction for felon in possession of a weapon, 18 U.S.C. § 922(g). Defendant Gilbert Caballero Ybarra ("Ybarra") claims (1) that the evidence was insufficient to convict him and (2) that the district court erred in including two previous convictions in his criminal history for sentencing purposes. Finding that the evidence was sufficient to convict Ybarra and that the two convictions were properly included in his criminal history, we AFFIRM the judgment of the district court.

**BACKGROUND**

On July 28, 1992, an undercover Houston police officer went to 6504 Longview in Houston to buy heroin. Herlinda Ybarra ("Herlinda"), Ybarra's wife, answered the door. Ybarra, who was in the living room of the house, directed Herlinda to sell heroin to the officer. Later that evening, police executed a search warrant at the address. Ybarra was not home, but his wife and children were. During the search, police found two loaded guns between the mattress and the box springs of the bed.

One of the bedrooms in the house was occupied by an adult man and woman. In that room, the police found both men's and women's clothing, including a work shirt hanging in the closet with the name "Ybarra" on it. In the bedroom there were photographs of Ybarra and Herlinda. A cable company employee ID in the name "Gilbert Ybarra" was also found in the bedroom.

In the bedroom and the kitchen the police found several pieces of mail addressed to Ybarra at 6504 Longview. Among the mail were two bills postmarked in January 1992 and an envelope postmarked April 1992.

Ybarra had been seen previously by the police at 6504 Longview. The night before the search, an officer saw Ybarra coming out of the house and driving away in a brown truck which they had seen previously parked at the home. During the search, the same brown truck was parked in front of the house. One of the officers "ran the license plate on the truck; and it came back with two traffic warrants in Gilbert Ybarra's name."

During the search, an officer asked Herlinda where Ybarra was. She said that he had gone to the store and that, as long as the police were parked in front of the house, "there's no way he's coming home."

On July 19, 1993, almost a year after the search, a Houston police officer and an agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") went to 6504 Longview to interview Ybarra. Ybarra was there and spoke with the officers. The officers testified that Ybarra admitted that he owned the firearms found during the search, that he was a convicted felon, and that he knew he could not legally possess weapons. At trial Ybarra denied that he had admitted to owning the guns.

2

At trial, Ybarra's sister and brother-in-law testified that Ybarra was living with them during July 1992. Another witness testified that Ybarra was not living at 6504 Longview during the summer of 1992.

Ybarra was indicted by a federal grand jury and charged with one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1). The government filed notice of its intent to seek a sentence enhancement under 18 U.S.C. § 924(e). Ybarra waived a jury trial and was tried by the court. He was found guilty and sentenced to 235 months in prison.

## STANDARDS OF REVIEW

In reviewing the sufficiency of the evidence in a bench trial, we must affirm the conviction if there is substantial evidence. *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). "[T]he test for evidential sufficiency is whether any substantial evidence supports the finding of guilty and whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty." *United States v. Davis*, 993 F.2d 62, 66 (5th Cir. 1993) (quoting *United States v. Richardson*, 848 F.2d 509, 511 (5th Cir. 1988)). As an appellate court, it is not our task to weigh the evidence or determine the credibility of witnesses. *Jennings*, 726 F.2d at 190. We must view all evidence in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court. *Davis*, 993 F.2d at 66. Our review is the same whether the evidence is direct or circumstantial. *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2150 (1994).

In reviewing sentencing guideline cases, we review the factual findings of the district court for clear error. *United States v. Washington*, 44 F.3d 1271, 1280 (5th Cir.), cert. denied, 115 S. Ct. 2011 (1995) . The district court's application of the guidelines to the findings are reviewed *de novo*. *United States v. Gaitan*, 954 F.2d 1005, 1008 (5th Cir. 1992).

## DISCUSSION

**Sufficiency of the Evidence**

In order to convict one for felon in possession of a firearm, the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm. *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988). At trial, Ybarra stipulated that he was a convicted felon and that the firearm was in, or affected, interstate commerce. Therefore, the only element the government had to prove was that Ybarra knowingly possessed a firearm.

Possession of the firearm may be actual or constructive. *United States v. Mergerson*, 4 F.3d 337, 348-49 (5th Cir. 1993). Constructive possession is "ownership, dominion, or control over the contraband itself, *or* dominion or control over the premises in which the contraband is concealed." *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991) (emphasis in original). "[M]ere control or dominion over the place in which contraband or an illegal item is found *by itself* is not enough to establish constructive possession when there is joint occupancy of a place." *Mergerson*, 4 F.3d at 349 (emphasis in original). "In our previous joint occupancy cases, this court has adopted a commonsense, fact-specific approach to determining whether constructive possession was established. We have found constructive possession in such cases only when there was some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Id*. (quoting *Smith*, 930 F.2d at 1086; internal citations omitted).

Ybarra argues that the evidence is insufficient to prove that he possessed the firearm. He argues that this case is similar to *Mergerson*, where we found the evidence insufficient to prove the defendant's possession of a firearm. In *Mergerson*, a handgun was found between the mattress and box springs of a bed in the defendant's home, which he shared with his girlfriend. There was a pawnshop receipt showing that the gun had been purchased by the girlfriend long before the defendant moved in with her. We held that this was not enough evidence to convict the defendant of possessing a firearm.

We believe that the instant case is clearly distinguishable from *Mergerson*. Here, we have more than just evidence that Ybarra lived in a house where a gun was present. We also have Ybarra's

4

confession that he owned the gun and evidence that Ybarra was dealing heroin out of the house. Ybarra correctly argues that "an accused may not be convicted on his own uncorroborated confession." *Smith v. United States*, 348 U.S. 147, 152 (1954). This is especially true when "the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case." *Id*. at 155. Because Ybarra's statement to the officers that he owned the gun is central to an element of the government's case, possession of the firearm, we must satisfy ourselves that the confession is corroborated. "The corroborative evidence alone need not prove the defendant's guilt beyond a reasonable doubt, nor even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty. . . . [E]xtrinsic proof [is] sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged." *United States v. Garth*, 773 F.2d 1469, 1479 (5th Cir. 1985), *cert. denied*, 476 U.S. 1140 (1986) (internal quotations omitted).

After reviewing the record, we believe that there is sufficient evidence to corroborate Ybarra's confession. For example, the evidence showed that:

1. Ybarra was seen at the house at 6504 Longview before the July 28, 1992, search;

2. Ybarra's truck was "periodically" parked at the house;

3. Men's shoes and clothing, including several shirts with Ybarra's name on them, were found at the house during the search;

4. Photographs of Ybarra were found in the bedroom of the house during the search;

5. An employee ID card in Ybarra's name was found in the bedroom during the search;

6. Several pieces of mail addressed to Ybarra were found in the house during the search;

7. The day before the search, Ybarra was seen leaving the house in his truck;

8. The evening of the search, Ybarra was present at the house and authorized Herlinda's sale of heroin to the undercover officer.

9.   The police knew that Ybarra resided at 6504 Longview through "prior police work";

10.  Ybarra was at the house on several occasions after the search.

11.  Herlinda stated to the police during the search that there was "no way [Ybarra was] coming home" as long as the police were there.[1]

Taken together, these facts provide sufficient evidence to corroborate Ybarra's possession of the firearm found at 6504 Longview. *See* **Wong Sun v. United States**, 371 U.S. 471, 489 (1963); **Smith**, 348 U.S. at 156; **Garth**, 773 U.S. at 1479.

The evidence was sufficient to prove that Ybarra lived at the house with his wife, Herlinda. The evidence showed that Ybarra authorized the heroin sale. The combination of Ybarra's residence in the house, his narcotics trafficking there and his corroborated confession that he owned the firearm, was sufficient to prove that he possessed the firearm. Therefore, his conviction for felon in possession of a firearm is affirmed.

**Sentencing Issues**

Ybarra argues that the district court erred in counting as part of his criminal history two convictions for which he had been released from custody over 15 years prior to the commission of the instant offense. We disagree.

On May 13, 1971, Ybarra was convicted of possession of heroin and marijuana and sentenced to ten years in prison. On March 29, 1972, Ybarra was convicted of burglary and sentenced to ten years in prison. On April 28, 1976, he was paroled on both convictions. On September 13, 1977, Ybarra was again convicted for possession of heroin and sentenced to life in prison. On November 29, 1977, his paroles in the 1971 and 1972 convictions were revoked because of his conviction of the 1977 offense.

---

[1] Ybarra argues that this statement is hearsay and should be inadmissible. However, the statement is not offered for the truth of the matter asserted. The assertion Herlinda made was that Ybarra would not come home as long as the police were there. The statement was offered to prove that Ybarra lived at the house. Whether Ybarra would come home and, if not, why not, was not at issue in the trial. Therefore, the statement was not offered to prove the truth of the matter asserted and, by definition, was not hearsay. FED. R. EVID. 801 (Hearsay defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

The Sentencing Guidelines require that three criminal history points be added for each prior sentence of imprisonment of more than 13 months. U.S.S.G. § 4A1.1(a). A prior sentence is not counted if it was imposed more than 15 years prior to the defendant's commission of the instant offense, unless that sentence resulted in the defendant being incarcerated during any part of the 15-year period. U.S.S.G. § 4A1.2(e)(1).

The district court concluded that the 1977 parole revocation of the 1971 and 1972 offenses resulted in Ybarra being imprisoned during the 15 years prior to the instant offense.[2] Accordingly, the district court assessed three criminal history points for each of these prior convictions. This moved Ybarra's criminal history category to VI. Based on a total offense level of 33, his guideline range became 235 to 293 months. He was sentenced to 235 months. If the two convictions were not counted, his criminal history category would be IV and his guideline range would be 188 to 235 months.

Ybarra argues that the district court erred in counting the 1971 and 1972 convictions. He contends that, because he was imprisoned for the 1977 offense by the time the paroles were revoked for the 1971 and 1972 offenses, he was not imprisoned as a "result" of the earlier convictions.[3] Therefore, the convictions are older than 15 years and should not be counted.

Ybarra is incorrect. When his parole was revoked he again began serving the ten-year sentences he received in 1971 and 1972. He was serving three sentences: the 1971 sentence, the 1972 sentence and the 1977 sentence. *See United States v. Cornog*, 945 F.2d 1504, 1510 (11th Cir. 1991); *United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993).

## CONCLUSION

---

[2] Ybarra did not challenge below, and does not challenge here,, the finding that his parole was revoked in 1977. He merely claims that, because he was already incarcerated, this revocation did not "result" in his imprisonment.

[3] Ybarra cites no cases in support of this interpretation of the guidelines.

The evidence was sufficient to convict Ybarra of being a felon in possession of a weapon. The combination of his residence in the house where the gun was found, his drug dealing at the house and his corroborated confession that he owned the gun clearly allowed a factfinder to find beyond a reasonable doubt that he possessed the firearm. The district court did not err in counting Ybarra's two prior convictions as part of his criminal history. Accordingly, the judgment of the district court is AFFIRMED.