# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 28, 2009

No. 08-20472

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

HENRY HORDGE

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CR-169-1

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Henry Hordge was found guilty after a jury trial of one count of possession of a firearm by a convicted felon. On appeal, Hordge alleges that the evidence was insufficient to establish he knowingly possessed the firearm. He also claims that several statements made by the prosecutor during closing arguments were improper and prejudicial. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS

On January 3, 2007, at about 2:30 a.m., police officer Brandon Baker was patrolling in southwest Houston. He stopped a lone woman walking in the middle of the road. The woman informed the officer that she had a room at the Knights Inn and her identification was in the room. Officer Baker and the woman went to the hotel. At the hotel, they met Officer Guy Majors. The officers were next to her as the woman opened the door to her room. Officer Baker saw another woman walk toward the door and throw a crack pipe and two rocks of crack cocaine to the floor. Officer Baker entered the room and handcuffed the second woman.

As Officer Baker arrested her, Officer Majors saw Hordge sitting on the bed. Hordge's hand was concealed under the pillow beside him on his right. He was moving his hand under the pillow. Officer Majors pulled out his weapon and ordered Hordge to show his hands. Hordge failed to comply; the officer repeated his order. Officer Baker then approached Hordge, pulled him off the bed, and handcuffed him. Officer Baker looked under the pillow and discovered two crack pipes and a gun. There is evidence that the gun was closer to Hordge than the pipes. The gun was later found to be inoperable, but it contained one live round. No fingerprints were retrieved from the gun or the crack pipes. Hordge was indicted for unlawful possession of a firearm after having been convicted of a felony. *See* 18 U.S.C. § 922(g)(1).

After the prosecution presented its evidence, Hordge moved for a judgment of acquittal. He argued there was insufficient evidence that he knowingly possessed the firearm because it was equally plausible that he was reaching only for the crack pipes. Hordge also asserted that there was no physical evidence

linking him to the gun; he did not have exclusive control over the room; and others had been present in the room. The district court overruled the motion.

## II. DISCUSSION

We consider separately the sufficiency of the evidence and whether closing arguments made by the prosecutor were reversible error.

### A. Sufficiency of the Evidence

Hordge challenges the evidence of his knowing possession of the firearm. Where a defendant has preserved a challenge to the sufficiency of evidence, as did Hordge, we review the denial of a judgment of acquittal *de novo*. *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998). We determine whether, when viewing the evidence in the light most favorable to the verdict, "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000). The jury can freely choose among reasonable constructions of the evidence; the evidence "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* "If, however, the evidence gives equal or nearly equal circumstantial support to a theory of guilt, as well as to a theory of innocence, the conviction must be reversed." *Id.* at 882-83.

For a felon-in-possession offense, the Government must prove 1) the defendant has been convicted of a felony, 2) the defendant possessed a firearm in or affecting interstate commerce, and 3) the defendant knew he possessed the firearm. *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995). The first two elements are undisputed. Hordge argues only that the Government failed to prove knowing possession.

Possession may be actual or constructive. *Id.* at 365. Actual possession requires direct physical control over the gun. *See United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998). Constructive possession is "ownership, dominion, or control over the contraband itself, or dominion or control over the premises in which the contraband is concealed." *Ybarra*, 70 F.3d at 365. However, where there is joint occupancy such as in this motel room with multiple occupants, mere control or dominion is insufficient. Rather, constructive possession will be shown only when there is some evidence supporting a plausible inference that the defendant knew about the weapon. *Id.*

In the principal case relied on by Hordge, the police found a gun between the mattress and box springs in the bedroom that the defendant and his girlfriend shared. *United States v. Mergerson*, 4 F.3d 337, 348 (5th Cir. 1993). We concluded that there was insufficient evidence to demonstrate constructive possession because the weapon was not in plain view, there were no other circumstances establishing Mergerson knew of the weapon, and there was evidence his girlfriend had purchased the weapon before he had moved in with her. *Id.* at 349. Hordge argues that the Government here has similarly failed to meet its burden because Hordge and two women occupied the room; the weapon was not in plain view; there were no fingerprints on the gun; and the room was registered to another person, Frank Quinn. Hordge further argues that it is equally plausible that he was reaching for or hiding the two crack pipes that were also found under the pillow.

The facts in *Mergerson* are not the same as here. In *Mergerson*, the room was unoccupied; someone else owned the gun; and the gun was out of the defendant's reach. Rather differently, Hordge was in the room, there was no

4

evidence of who owned the gun, and Hordge was sitting on the bed with his hand under the pillow within reach of the gun. Additionally, Hordge was twice ordered to remove his hand from beneath the pillow, and he refused. A fact-finder was entitled to conclude that if Hordge had only been trying to place something under the pillow, he would not have needed to leave his hand there after an officer with his weapon drawn ordered him to show his hands. A fact-finder could conclude Hordge was reaching for something useful, not leaving his hands in place after hiding something incriminating. This is "some evidence supporting at least a plausible inference" that Hordge had knowledge of and access to the weapon. The evidence supporting Hordge's conviction is sufficient.

*B. Prosecutorial Remarks*

Hordge also argues that statements made by the Assistant United States Attorney ("AUSA") during closing arguments were improper and prejudicial. He claims these statements appealed to the jury to support law enforcement, vouched for the credibility of Government witnesses, and were inflammatory.

We must decide whether the prosecutor made an improper remark and if so, whether the remark affected the substantial rights of the defendant. *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). To determine whether the defendant's substantial rights have been affected, "this court considers 1) the magnitude of the statement's prejudice, 2) the effect of any cautionary instructions given, and 3) the strength of the evidence of the defendant's guilt." *Id.* at 211. The "determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury verdict." *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004) (citation omitted).

There were objections at trial to only two of the statements that are the subject of this argument on appeal. First, the AUSA stated, "Those officers leave their family and friends to go out and put their life on the line in order to protect us from that criminal activity out there. Unfortunately, it's rampant." Second, the AUSA told the jury that they should

> focus on the thoughts of the police officers. . . . Those officers want to go home tonight and to see that everybody in that room is safe as well. They don't take their jobs lightly. These are the most serious of circumstances. And this case – this is the most deadly weapon in our society. It's made for one purpose, to kill.

The district court sustained Hordge's objection that the first statement was an improper plea for law enforcement. Hordge objected to the second statement, and the court told the AUSA to "stick to just the facts of the case."

Neither statement expressly vouched for the credibility of the witnesses nor asked the jury to believe the officers simply because they were doing their jobs. *Cf. United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008); *United States v. Ramirez-Velasquez*, 322 F.3d 868, 874 (5th Cir. 2003). Appeals to the jury to act as the conscience of the community are permissible as long as they are not intended to inflame. *Duffaut*, 314 F.3d at 211. No intent to inflame appears. The district court sustained the first objection and gave a corrective instruction to the AUSA after the second. At least three cautionary instructions were given to the jury that statements made by the attorneys are not evidence. We find no error in the resolution of these issues.

Hordge also asserts that other statements by the AUSA require reversal, but to those, Hordge did not object. Consequently, we review them for plain error. *Gracia*, 522 F.3d at 599-600. We must find 1) there was error, 2) the error

was plain (clear and obvious), and 3) the error affected his substantial rights. *Id.* at 600. Even if this standard is met, we will not reverse unless the "plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* Therefore, a prosecutor's improper statements constitute reversible plain error when "the defendant's right to a fair trial is substantially affected." *United States v. Burns*, 526 F.3d 852, 857 (5th Cir. 2008).

Hordge points to three statements that he argues are reversible as plain error. The AUSA told the jury that "whether [the firearm] is functional or not, it still meets the definition of being a firearm." The AUSA's next sentence is somewhat obscure, but it is the one to which objection is made: "And that firearm, as a plea to law enforcement, was seized because you can use that firearm to hold people up, threaten them, or any other illegal activity." Hordge argues that the AUSA was making a "blatant and improper appeal[] to the jury" to play a law enforcement role rather than be fact-finders.

It is difficult to know what interpretation jurors would give the latter sentence, but we conclude it encouraged jurors to be mindful of the importance of law enforcement and of getting dangerous weapons away from the criminally minded. During closing arguments, an attorney may urge conclusions to be drawn from the evidence as long as it is clear that the conclusions must be based on the evidence. *United States v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007). There was evidence presented at trial that the weapon satisfied the definition of a firearm. Hordge's counsel questioned the witness regarding the inoperable nature of the weapon. Hordge asserted that the weapon was only good for "point[ing] at somebody, not to fire at somebody." As an attempt to rebut Hordge's effort to invalidate the nature of the weapon, the Government elicited

testimony from the witness that regardless of whether there was a magazine or firing pin in the weapon at the time it was examined, it still meets the definition of a firearm. We find no effect on substantial rights.

The last two statements were these. The AUSA said that Officer Baker was a "dedicated, passionate young man that believes in his job and puts his life on the line every day going out there in crime-infested areas" for the safety of the people in the community. The AUSA asked rhetorically what would it take for Officer Majors to pull his firearm. He also supplied an answer: it would have to be "a deadly situation, a very deadly situation. And thank God for officers like that, Brandon Baker and Guy Majors." It is argued that one statement vouched for the credibility of the witnesses and the other appealed to emotions.

The first issue is whether these statements were error – a "deviation from a legal rule." *Gracia*, 522 F.3d at 600-01. During closing arguments, a prosecutor may discuss evidence actually admitted and reasonable inferences that can be drawn from that evidence. *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008). Additionally, a prosecutor may argue "fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." *Gracia*, 522 F.3d at 601. The AUSA's statements that he believed Officer Baker to be a "dedicated, passionate young man" who risked his life daily by entering crime-infested areas was an appeal to the jurors' emotions, a statement about the witness's courage, and an implication about his honesty. The AUSA's speculation about what it would take for Officer Majors to pull his gun was not based on evidence.

Despite our concern about the statements, whatever error existed here was harmless. The magnitude of any prejudice from the AUSA's comments during

8

closing argument when viewed in the context of the entire trial is outweighed by other factors. These counterweights include the effect of three cautionary instructions given to the jury, the judge informing the AUSA to refer only to the facts of the case, and the statement by the AUSA that "nothing more need be said about the facts of the case other than what you recall, and that's what I would defer to." These two statements do not cast serious doubt on the correctness of the jury verdict. *Gracia*, 522 F.3d at 603.

Relying on *Gracia*, Hordge argues that even if these statements are individually insufficient to warrant reversal, their cumulative effect is sufficiently prejudicial. In *Gracia*, the prosecutor told the jury that the agents were "very, very credible;" he asked the jury if they thought an agent who had worked in law enforcement for many years would risk his career and family by lying under oath; and he told the jury to respect the efforts of law enforcement and if they were to acquit Gracia they would have to believe the agents got out of bed that day and decided they were going to start a conspiracy to wrongfully convict Gracia. *Id.* at 600. These statements were prejudicial and improperly encouraged jurors to substitute the government's credibility assessment of its witnesses for jurors' independent determination. *Id.* at 606. We do not have such explicit or excessive comments here.

Additionally, "occurrences of prosecutorial misconduct ordinarily must be viewed individually," and instances where improper statements are viewed cumulatively are "rare in this circuit." *United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007). The statements made by the AUSA, even if viewed cumulatively, are insufficient to warrant reversal.

We AFFIRM the judgment of conviction and the sentence.

9