In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00158-CR

                                                ______________________________

 

 

                                 GARY JORDAN COZZENS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0820400

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Gary
Jordan Cozzens appeals from his convictions by jury on three charges of
aggravated sexual assault of a child and one charge of indecency with a child
by sexual contact.  Cozzens has filed a
single brief, in which he raises issues common to each of his appeals.[1]  Cozzens argues that the trial court committed
reversible error in the admission of expert testimony and medical records.  Cozzens also contests the factual sufficiency
of the evidence.  

            We
addressed these issues in detail in our opinion of this date on Cozzens’ appeal
in cause number 06-09-00157-CR, styled Gary
Jordan Cozzens v. The State of Texas. 
For the reasons stated therein, we likewise conclude that error has not
been shown in this case.

            We
affirm the judgment of the trial court.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          November
23, 2010

Date Decided:             November
24, 2010

 

Do Not Publish











[1]Cozzens
appeals from his conviction of one count of aggravated sexual assault of a
child and two counts of indecency with a child by sexual contact in cause
number 06-09-00157-CR.   








n to not object was reasonable. Before the question of which Mosley complains,
the State asked McCoy, "Did she tell you what the spider felt like when it was inside?" Two
of Mosley's attorneys objected, and the court overruled the objections. Defense counsel
could have reasonably concluded that any further objections on that topic would also be
overruled. Further, based on the evidence set forth above in the legal and factual
sufficiency analysis, Mosley has failed to show how counsel's failure to object so prejudiced
his defense as to render counsel ineffective. 
          3.       Eliciting damaging testimony from the victim on cross-examination 
          Mosley also contends his trial counsel was ineffective for eliciting damaging
testimony from Jane on cross-examination. Mosley contends Jane never testified on direct
examination that he hurt her or caused her pain. On cross-examination, however, his
attorney elicited this testimony: 
          Q        Has your pawpaw that you pointed out ever done anything to
hurt you?
 
          A       Yes.
 
          Q       What?
 
          A       (Speaking very quietly) He touched my hiney.
 
          Q        Now you just sat there, and did you say he touched your hiney?
 
          A        I mean booty. 
 
          Mosley contends that, through this cross-examination, his own attorney elicited the
only evidence that tied him to the victim's injuries. This misstates the evidence. When
Jane was asked on direct examination how it felt when Mosley touched her booty, she
answered, "Not good." There was also other evidence tying Mosley to Jane's injuries,
including her testimony that her Pawpaw touched her booty and that no one else had ever
touched her that way. 
          The record is also devoid of any explanation for counsel's decision to cross-examine
Jane in this manner. It was certainly reasonable for trial counsel to pursue this line of
questioning in light of the affection the victim showed for Mosley in her earlier testimony.
Under these circumstances, it was not unreasonable for counsel to expect a favorable
response to the question. Mosley has failed to satisfy the first prong of Strickland, that his
counsel's representation fell below an objective standard of reasonableness.
          4.       Eliciting testimony from Green that Jane's wounds could not have been self-inflicted 

          Mosley again contends his counsel conducted an ill-advised cross-examination that
elicited damaging testimony not previously brought out on direct examination. During
McCoy's testimony, she described how Jane would "mess with herself in the tub." Mosley
contends this clearly raised the possibility that Jane's injuries could have been self-inflicted,
but defense counsel blindly threw away this argument during his cross-examination of
Green. Counsel asked Green the direct question whether it was possible Jane's injuries
were self-inflicted. He replied, "It is very unlikely that this was self inflicted," because of the
degree of tearing. 
          Mosley fails to demonstrate it was unreasonable for his trial counsel to pursue this
defensive strategy. The record is devoid of any explanation for counsel's decision to cross-examine Green as he did. It was not unreasonable for defense counsel to explore the
possibility of alternative causes for Jane's injuries. To effectively raise the self-infliction
defense with the jury, it would have to be established that it was at least possible. Defense
counsel's attempt to establish its possibility was not unreasonable. Mosley has again failed
to satisfy the first prong of Strickland, that his counsel's representation fell below an
objective standard of reasonableness. 
          5.       Failure to address "loaded question" issue
          Mosley contends this case began on the basis of a loaded question: McCoy's
question to her daughter, "[W]ho had the spider." Mosley contends this was a very loaded
question and could easily have elicited an incorrect response. He contends his counsel's
failure to point this out to the jury deprived him of effective assistance. 
          Again, the record is devoid of any explanation for counsel's decision not to pursue
this strategy. The record does reflect, however, that in the discussions Jane had with other
people about the abuse, and in her trial testimony itself, she never named anyone other
than Mosley as the perpetrator. It was not unreasonable for defense counsel, aware of
Jane's consistency, to have considered and rejected this strategy. 
          6.       Cumulative effect 
          Mosley contends the cumulative effect of defense counsel's errors and omissions
seriously undermined confidence in the result of the trial. He contends defense counsel
could have pursued or not pursued different avenues for his defense. 
          A vague, inarticulate sense that counsel could have provided a better defense is not
a legal basis for finding counsel constitutionally incompetent. Bone v. State, 77 S.W.3d
828, 836 (Tex. Crim. App. 2002). Further, Mosley has not shown his counsel's
representation fell below an objective standard of reasonableness. The record is devoid
of any explanation for counsel's reasons for pursuing or not pursuing different trial
strategies. An allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996). The record is silent regarding the reasons for
counsel's conduct, and finding counsel ineffective would cause this Court to engage in
mere speculation. See Jackson, 877 S.W.2d at 771. Based on this record, we cannot
conclude Mosley established that his counsel's conduct fell below an objective standard
of reasonableness. See Thompson, 9 S.W.3d at 814. Further, in light of the evidence
reviewed under the legal and factual sufficiency analysis above, Mosley has failed to show
how counsel's actions so prejudiced his defense as to render counsel ineffective. 
IV.      HEARSAY STATEMENT
          Mosley contends McCoy's testimony concerning a statement attributed to her
mother was hearsay and should have been excluded. The testimony came during the
following exchange:
          Q        Okay. After you took [Jane] to the bedroom, looked at her, saw
that her private area was a little bit red, what did you do?
 
          A        I called my mother. I called my mother and told her what [Jane]
had just told me and my mom was like --. 
 
                     [Defense Counsel]: Your Honor, I would object to any
testimony --.
 
                     THE COURT:          I'm going to sustain. 
 
                     [Defense Counsel]: That'd be hearsay.
 
                     [Prosecutor]:            Your Honor, if I could, we're not offering it
for the truth of the matter, sir. It was to show the state of mind.
 
                     [Defense Counsel]: We still object, Your Honor. That's -- that
has no indication of state of mind.
 
          . . . .
 
                     [Prosecutor]:            The evidence is going to be that she called
to tell her mother what [Jane] told her and her response was, Well, I can't
watch them all the time, which suggests that she knew they were alone
together and she knew what was happening. It's not being offered for the
truth of the matter, sir. 
 
                     [Defense Counsel]: Judge, our client's wife's state of mind has
nothing to do with this.
 
                     THE COURT:          Well, no, it's not a state of mind.
 
                     [Prosecutor]:            It's not hearsay. I'm not offering it for the
truth of the matter asserted. 
 
          . . . .
 
                     THE COURT:          I'm going to overrule the objection.
 
          . . . .
 
          Q        . . . . So you called your mother and you told her what [Jane]
just said to you. What was her response?
 
          A        Well, I can't watch them all the time.
 
          Q        Those were her exact words?
 
          A        Those are exact words. 
 
          The admission or exclusion of evidence is a matter within the discretion of the trial
court. Dixon v. State, 940 S.W.2d 192, 197 (Tex. App.—San Antonio 1996, no pet.). We
will reverse the trial court's determination only when its decision is "so clearly wrong as to
lie outside that zone within which reasonable persons might disagree." Cantu v. State, 842
S.W.2d 667, 682 (Tex. Crim. App. 1992).
          Hearsay is defined by the Rules of Evidence as a statement, other than one made
by the declarant while testifying at the trial, offered into evidence to prove the truth of the
matter asserted. Tex. R. Evid. 801(d). "Matter asserted" includes any matter explicitly
asserted, and any matter implied by a statement, if the probative value of the statement
as offered flows from the declarant's belief as to the matter. Tex. R. Evid. 801(c). The
State contends the statement, "Well, I can't watch them all the time," was not offered for
the truth of the declarant's ability to watch Mosley and Jane all the time, and was,
therefore, not hearsay. The State would be correct if we were applying federal rules. See
United States v. Ybarra, 70 F.3d 362, 366 n.1 (5th Cir. 1995) (finding testimony that
declarant said Ybarra would not come home as long as police were there was offered to
prove Ybarra lived at house; therefore, statement was not offered to prove truth of matter
asserted and, by definition, was not hearsay). 
          The Rules of Evidence on hearsay are much broader than the federal rules. 
Relevant to this case is the absence of a definition for "matter asserted" in the federal
rules. In Texas, "truth of the matter asserted" includes any matter explicitly asserted, but
also includes within hearsay any matter implied by a statement, if the probative value of
the statement as offered flows from the declarant's belief as to the matter. See Tex. R.
Evid. 801(c). Therefore, the implication of the out-of-court statement is a "matter asserted"
and is inadmissible hearsay if the statement is offered for the implication. See 2 Steven
Goode et al., Texas Practice: Guide to the Texas Rules of Evidence § 801.2 (3d ed.
2002) (discussing various categories of hearsay). 
          Similar testimony has been found to be hearsay. See Drone v. State, 906 S.W.2d
608, 611–12 (Tex. App.—Austin 1995, pet. ref'd) (finding testimony accused's girlfriend
said, "I don't know why I washed those clothes for [the accused]. It felt like I killed the old
woman myself," was hearsay); see also O'Rear v. State, 138 Tex. Crim. 327, 136 S.W.2d
214, 215 (1940) (during prosecution for possession of beer for sale in dry area, testimony
of constable that area residents asked him to "clean up that mess out there" was
inadmissible hearsay). 
          We hold that McCoy's testimony concerning her mother's statement was hearsay. 
Rule of Evidence 801(c) treats the implication of the out-of-court statement as a "matter
asserted" and hearsay if offered for the implication. As illustrated by the State during trial,
the statement was offered for the implication that McCoy's mother knew Mosley and Jane
were alone together and that she knew Jane was being sexually assaulted. This is an
implied "matter asserted" under the Rules of Evidence and was, therefore, hearsay. The
trial court erred in overruling Mosley's objection. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b). A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record as a whole, it
appears the error "did not influence the jury, or had but a slight effect," we must conclude
that the error was not harmful and allow the conviction to stand. Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998).
          For claims of nonconstitutional error, the Texas Court of Criminal Appeals has held
that "a conviction should not be overturned unless, after examining the record as a whole,
a court concludes that an error may have had 'substantial influence' on the outcome of the
proceeding." Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words,
if we have "a grave doubt" the result was free from the substantial influence of the error,
then we must reverse. Id. The court has explained that "grave doubt" means that, "in the
judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as
to the harmlessness of the error." Id. at 637–38, citing O'Neal v. McAninch, 513 U.S. 432,
435–36 (1995). Thus, "in cases of grave doubt as to harmlessness the petitioner must
win." Burnett, 88 S.W.3d at 638.
          As discussed above, there was ample evidence of Mosley's guilt, including the
testimony from the victim, the outcry testimony, and the medical evidence. After examining
the record as a whole, we find the error did not influence the jury, or had but a slight effect,
and was therefore harmless. 
V.       ORDER ON MOTION FOR CONTINUANCE
          Mosley does not contend on appeal the trial court erred in denying his motion for
continuance. He contends, instead, that the trial court's order denying his motion for
continuance deferred to the recused judge's reasoning and rationale and was, in essence,
a ruling by the recused judge. He contends that the order was therefore void and that the
subsequent trial which naturally followed from this void order is itself a nullity. He asks this
Court to reverse his conviction and remand the case to the point of the pending motion for
continuance in order for it to be ruled on by an impartial judge. 
          The Honorable Bill Peek was the original trial judge in this case. Mosley filed a
motion to recuse Judge Peek on the ground his impartiality might reasonably be
questioned. Mosley cited Judge Peek's order shutting down his bail bond business for
thirty days and the fact Judge Peek was listed as a witness by Bowie County in subsequent
litigation stemming from that order. 
          A motion to recuse seeks to prevent a judge from hearing a case because of a
nonconstitutional reason. Even if a motion to recuse is procedurally defective, the
challenged judge must either grant the motion or refer the motion, so another judge can
determine the merits of the motion to recuse. See McLeod v. Harris, 582 S.W.2d 772, 775
(Tex. 1979); Jamilah v. Bass, 862 S.W.2d 201, 203 (Tex. App.—Houston [14th Dist.] 1993,
orig. proceeding). Here, Judge Peek properly referred the motion for recusal for hearing
by another judge. The Honorable Paul Banner was appointed to hear the motion, which
he denied after a hearing. 
          Mosley then hired Michael D. Peek, Judge Peek's son, to represent him. Judge
Peek then voluntarily recused himself from Mosley's case. Under Rule of Civil Procedure
18b(2), judges must disqualify themselves from proceedings in which their impartiality
might reasonably be questioned or, as in this case, where the judge's son or daughter
becomes an attorney in the case. See Tex. R. Civ. P. 18b(2)(g) (judge shall recuse in any
proceeding in which person within first degree of relationship to him or her is acting as
lawyer in proceeding); Dunn v. County of Dallas, 794 S.W.2d 560, 562 (Tex. App.—Dallas
1990, no writ).


 A party is not required to file a motion as a prerequisite to a judge
disqualifying under this rule. Dunn, 794 S.W.2d at 562. After Judge Peek recused himself,
the Honorable Leon F. Pesek, Sr., was assigned to the case.
           On the first day of the trial, April 2, 2002, Mosley filed a motion for continuance,
contending that his expert witness would not be able to attend the trial and that he was
unable to find a replacement for this witness. He further averred that he was unable to
procure the attendance of another witness, Mosley's daughter, who apparently resided in
the state of Arkansas, that the State had agreed to continue the trial in this event, and that
he relied on the State's agreement. This was Mosley's third motion for continuance. Judge
Pesek denied the motion with the following language:
          It was my feeling that when all of these motions for continuances [sic]
set up, I had a discussion with Judge Peek concerning them and --
yesterday, which was the 1st -- and I knew these motions for continuances
[sic] were coming, I felt it was in the best interest that we have a, that all of
the attorneys and myself meet with Judge Peek since it's my feeling that a
senior judge, one that is brought in to try a case -- and in this particular case
Judge Peek specifically asked me whether I was available for that week, that
he wanted the case tried, to be disposed of. We met in Judge Peek's office
and I felt it was, if a continuance was going to be granted in view of the past
history over which I had no previous information or part of, that that call
ought to be done by Judge Peek. While he expressed clearly that he has no
interest in the outcome of this case, he was of the opinion that the case,
based upon the prior record and assurances given him, that this case should
go to trial in view of the fact of the State's preparing this case and getting the
witnesses subpoenaed and everything at this last minute that it should go to
trial . . . . And so based upon that, and I know it comes as no shock to the
attorneys here this morning, that I'm going to deny the motion for
continuance based upon our meeting yesterday, and I'm adopting the
reasoning that Judge Peek has as my own, even though he has nothing and
doesn't assert any interest in this case and has not in any way indicated to
me one way the other [sic] what should happen in this case other than it
needs to go to trail [sic]. 

          Rule 18a requires that, if a judge recuses himself or herself, the judge "shall make
no further orders and shall take no further action in the case except for good cause stated
in the order in which such action is taken." Tex. R. Civ. P. 18a(c). Once a judge is recused
or disqualified from a case, the prudent approach is for the recused judge and the assigned
judge to have no further communications with each other concerning any aspect of that
case. Any such communication has, at the very least, the appearance of violating the
basic policy reasons for the recusal in the first place. As the United States Supreme Court
stated in its determination of whether a judge was constitutionally disqualified, "justice must
satisfy the appearance of justice." In re Murchison, 349 U.S. 133, 136 (1955). This does
not mean, however, that every such communication is a violation of Rule 18a.
          Rule 18a prevents a recused judge from making any further orders without good
cause. The plain meaning of Rule 18a contemplates that "further action" can be taken only
through an order of the court. Indeed, a court acts by and through its orders and not
otherwise. See Dunn, 794 S.W.2d at 562; City of Hurst v. City of Colleyville, 501 S.W.2d
140, 143 (Tex. Civ. App.—Fort Worth 1973, writ ref'd n.r.e). Therefore, the issue for this
Court to decide is whether Judge Peek made further orders in this case without stating
good cause. Mosley contends Judge Peek's advice to Judge Pesek on the motion, and
Judge Pesek's subsequent adoption of that advice, renders the order, in essence, one by
Judge Peek. 
          Judge Pesek's ruling indicates he and the attorneys in this case met in Judge Peek's
office, where Judge Peek expressed his opinion that, based on the prior record and
assurances given to him, the case should go to trial. This reported reference to "the prior
record and assurances given him" obviously referred to events in the case and
communications made to Judge Peek before his recusal. And, while it is not entirely clear
what Judge Peek advised, it is clear he was not ordering the denial of the motion for
continuance as a present act. See Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v.
Stanfield, 71 S.W.3d 351, 354–55 (Tex. App.—Tyler 2001, no pet.) (factor in determination
of whether letter is official order is language indicating present act); Mixon v. Moye, 860
S.W.2d 209, 210 (Tex. App.—Texarkana 1993, orig. proceeding) (finding letter by trial
court did not constitute a judgment because it only indicated court's intention to render
judgment in certain way and directed counsel to prepare an order). 
          It is also apparent from the record the parties and Judge Pesek did not construe
Judge Peek's advice as an order. Although present at the time such alleged advice was
given, Mosley's attorneys made no objection to such advice at the hearing on the motion
for continuance. Nor did they object at that time to Judge Pesek conferring with Judge
Peek on the matter. Both sides of the case made detailed arguments to Judge Pesek at
that hearing on the propriety of the motion, and Judge Pesek then made his ruling in open
court. Whatever the exact content of Judge Peek's communications to Judge Pesek and
the attorneys, it is evident it was not an order as contemplated by Tex. R. Civ. P. 18a(c). 
Judge Peek did not violate the provisions of Rule 18a(c), and Judge Pesek's order on the
motion for continuance was not void. 
VI.      RECUSAL OF JUDGE PESEK FROM HEARING MOTION FOR NEW TRIAL 

          Mosley filed a motion for new trial based, in part, on the denial of his motion for
continuance and Judge Peek's advice on the motion. At the same time, he filed a motion
to recuse Judge Pesek from hearing his motion for new trial. The Honorable Lanny
Ramsay was assigned to hear the recusal motion. A hearing was conducted, and Judge
Ramsay denied the motion. 
          Mosley contends it was an abuse of discretion for Judge Ramsay to deny his motion
to recuse because Judge Pesek's impartiality was reasonably in question. Mosley does
not contend Judge Pesek had some pervasive bias or partiality against him, only that
Judge Pesek was biased on one particular ruling: the motion for new trial. Mosley
contends Judge Pesek should not have been permitted to hear his motion for new trial
because it was based, in part, on Judge Pesek's improper conduct in deferring his
adjudicative responsibility to Judge Peek on the motion for continuance. Mosley also
contends that, since Judge Pesek was biased against granting the motion for continuance
due to outside influence from Judge Peek, a reasonable person, knowing all the
circumstances, would suspect that Judge Pesek would be similarly motivated by these
extrajudicial forces to deny a motion for new trial as well. 
          A judge shall recuse himself or herself in any proceeding in which the judge's
"impartiality might reasonably be questioned." Tex. R. Civ. P. 18b(2)(a). We review the
denial of a motion to recuse for abuse of discretion. Tex. R. Civ. P. 18a(f); Vickery v.
Vickery, 999 S.W.2d 342, 349 (Tex. 1999) (op. on reh'g); McElwee v. McElwee, 911
S.W.2d 182, 185 (Tex. App.—Houston [1st Dist.] 1995, writ denied).


 The test for abuse
of discretion is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles. The mere fact that a trial court
may decide a matter within its discretionary authority in a different manner than an
appellate judge does not demonstrate such an abuse. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 242 (Tex. 1985). 
          We apply a reasonable person standard in determining whether a recusal motion
should have been granted. See Woodruff v. Wright, 51 S.W.3d 727, 736 (Tex.
App.—Texarkana 2001, pet. denied). The question is whether a reasonable member of
the public at large, knowing all the facts in the public domain concerning the judge's
conduct, would have a reasonable doubt the judge is actually impartial. Rogers v. Bradley,
909 S.W.2d 872, 881 (Tex. 1995). The impartial standard of Rule 18b(2)(a) has been
adopted in order that the public, i.e., the person on the street, might have confidence in the
judiciary and to protect judges from unjustified complaints about their being partial in their
decisions. Id. at 881–82.
          The United States courts of appeals have had to analyze whether a trial judge
should be disqualified when he or she receives advice or assistance from a biased or
interested source. Although federal courts apply the federal disqualification rule contained
in 28 U.S.C.A. § 455 (West 1993), that rule contains essentially the same language as
Rule 18b.


 Texas courts have looked to federal jurisprudence as an aid in these cases. 
See Rogers, 909 S.W.2d at 880; Woodruff, 51 S.W.3d at 736 n.6.
          In Hall v. Small Bus. Admin., 695 F.2d 175 (5th Cir. 1983), the losing party moved,
after trial, to disqualify the judge and to vacate the judgment because it came to light the
judge's law clerk had, among other things, accepted, before the judgment was rendered,
an offer to join the law firm which represented the winning party. Id. at 178. The judge
denied the motion on the ground the law clerk had never expressed an opinion to him
about the winning party and because the law clerk had accepted the offer of employment
only after the judge had made up his mind about the case and had written a rough draft of
the opinion. Id.
          On appeal to the Fifth Circuit, that court reversed and rendered an order
disqualifying the judge. In reaching that decision, the court remarked that the goal of
Section 455(a) "is to exact the appearance of impartiality" and therefore it was, in the
court's opinion, immaterial "[w]hether or not the law clerk actually affected the judge's
decision." Id. at 178–79. 
          In Edgar v. K.L., 93 F.3d 256 (7th Cir. 1996), a district court judge appointed, with
the parties' consent, a panel of experts. Although the parties were aware the panel had
ex parte meetings with the judge from time to time to discuss administrative matters, the
parties only discovered later that one of the meetings involved a discussion of the merits
and possibly a preview of the panel's final report. Id. at 257–58. When the parties moved
to disqualify the judge, he blocked discovery and denied the motion. Id. A petition for a
writ of mandamus to the Seventh Circuit Court of Appeals followed. Id. at 257.
          The Seventh Circuit issued a writ of mandamus disqualifying the judge. The court
found the panel of experts appointed by the district court judge was not truly neutral
because it had been influenced by submissions from advocacy groups and counsel
supporting plaintiffs in other lawsuits against the defendant. Id. at 261–62. As to Section
455(a), the court held: "A thoughtful observer aware of all the facts . . . would conclude
that a preview of evidence by a panel of experts who had become partisans carries an
unacceptable potential for compromising impartiality." Id. at 259–60 (citations omitted). 
          The Edgar court found the judge had received "personal knowledge" from the
partisan experts, as opposed to knowledge gained in a judicial capacity. Id. at 260. The
experts had advised the judge on conditions in Illinois state mental hospitals, which was
the basis for the suit. Id. at 257. The court distinguished between "personal knowledge"
and knowledge gained in a judicial capacity because information from the latter source
enters the record and may be controverted or tested by the tools of the adversarial
process. Id. at 259. Knowledge received in other ways, which can be neither accurately
stated nor fully tested, is "extrajudicial." The court found that off-the-record discussions
on substantive issues in chambers constitute "personal" or "extrajudicial" knowledge in the
sense the information conveyed to the judge leaves no trace in the record and cannot "be
controverted or tested by the tools of the adversary process." Id. The court found that
mandatory disqualification under Sections 455(a) and 455(b)(1) followed. Id. at 259–60. 
          Likewise, in In re Kensington Int'l, Ltd., 368 F.3d 289 (3d Cir. 2004), a federal district
judge appointed five advisers to assist him in a complex bankruptcy case, which consisted
of five consolidated asbestosis company bankruptcies. These advisers consisted of
lawyers, retired state court judges, and professors with experience in asbestosis or mass
tort litigation. Id. at 295–96. Several of the asbestosis companies involved in the
bankruptcy moved to disqualify the judge on the ground that the advisers were interested
in the litigation and the judge's reliance on them put his impartiality reasonably in question. 
Id. at 299. The court conducted a two-part inquiry. Id. at 303. First, determining whether
the advisers had a conflict, and second, if there was a conflict, whether it might be
perceived by the reasonably prudent person as having tainted the judge. Id. 
          The court noted two of the advisers represented claimants in another asbestosis-
related bankruptcy case captioned In re G-I Holdings Inc. Id. at 299. The court found
there was a substantial likelihood some of the future claimants in the G-I Holdings litigation
would also have claims against one or more of the debtors in In re Kensington. Id. The
court found the dual roles of the two advisers put them in a structural conflict of interest. 
Id. at 303. 
          The court then turned to the question of whether that conflict of interest by the two
advisers irrevocably tainted the judge. The court examined both the Hall and Edgar
decisions and found that the theme running through both those decisions is an almost
irrebuttable presumption that a judge is "tainted" and must be disqualified where the judge
surrounds himself or herself with individuals who may not be truly disinterested. Id. at 308.
Given the unique level of access and influence the advisers had, the length of their
appointment, and their conflicting dual roles, the court found that the reasonable person,
with familiarity of the circumstances, would conclude that the advisers' conflict of interest
tainted the judge. Id. at 309. 
          In this case, Mosley does not contend Judge Peek's advice to Judge Pesek
pervasively "tainted" his impartiality throughout the whole trial. Instead, he contends Judge
Peek's advice "tainted" or biased Judge Pesek on the motion for continuance and the
motion for new trial, which was based, in part, on the motion for continuance. We have
already concluded that Judge Peek did not violate Rule 18a(c) and that Judge Pesek's
order on the motion for continuance was not void. The question remaining is whether
Judge Pesek conferring with Judge Peek concerning the motion for continuance tainted
or biased him on the motion for new trial. We conclude it did not.
          There are two important circumstances in this case that distinguish it from the
federal cases discussed above. First, the meeting in Judge Peek's chambers was not
ex parte and the knowledge gained by Judge Pesek from that meeting was not hidden from
the parties. Unlike the circumstances in Kensington, Edgar, and Hall, here the attorneys
for both sides were present and had an opportunity to hear whatever knowledge Judge
Pesek obtained from Judge Peek. They therefore could have controverted or tested that
information by the tools of the adversarial process at the hearing on the motion for
continuance, which they did not do. 
          Second, unlike the circumstances in Kensington, Edgar, and Hall, where the alleged
taint concerned substantive matters, Judge Pesek's meeting with Judge Peek in the
present case concerned scheduling—an administrative matter—not an issue on the merits
of the case. It is undisputed the only subject discussed in that meeting concerned
scheduling the case for trial and whether the pending motion for continuance should be
granted. In ruling on the motion for continuance, Judge Pesek stated Judge Peek
"expressed clearly that he has no interest in the outcome of this case," and again, that
Judge Peek "doesn't assert any interest in this case and has not in any way indicated to
me one way the other [sic] what should happen in this case other than it needs to go to trail
[sic]." The truth of these statements was not challenged then, and is not challenged now.
          We conclude a reasonable member of the public at large, knowing all the facts
concerning Judge Pesek's conduct, would not have a reasonable doubt he was actually
impartial in his consideration of Mosley's motion for new trial.
          Even if Judge Ramsay erred in denying the motion to recuse Judge Pesek, we
would be required to apply a harm analysis. Again turning to federal jurisprudence, the
failure to recuse a judge because his or her "impartiality might reasonably be questioned"
is subject to harm analysis. In Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847
(1988), the United States Supreme Court approved the vacatur of a final judgment entered
by a district judge whose impartiality was reasonably in question. It explained, however,
that this remedy would not be required in all such cases. It suggested that, in deciding
whether to vacate such a final judgment, a court should "consider the risk of injustice to the
parties in the particular case, the risk that the denial of relief will produce injustice in other
cases, and the risk of undermining the public's confidence in the judicial process." Id. at
864.
          We find the Supreme Court's counsel on applying a harm analysis is appropriate in
determining whether an assigned judge abused his or her discretion by denying a motion
to recuse. We recognize, however, that such analysis is not undertaken in all recusal or
disqualification circumstances. For instance, where a judge is constitutionally disqualified,
such disqualification cannot be waived, even by agreement of the parties, and any orders
or judgments rendered by a judge who is constitutionally disqualified are void and without
effect. Buckholts Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 148 (Tex. 1982). In
addition, when a motion to recuse is filed, a trial court has only two options: recusal or
referral of the case to the presiding judge for a determination as to its merits. Tex. R. Civ.
P. 18a(c); In re Rio Grande Valley Gas Co., 987 S.W.2d 167, 178–79 (Tex. App.—Corpus
Christi 1999, orig. proceeding). This is true even when the motion may be considered
untimely or as stating insufficient grounds for recusal. Jamilah, 862 S.W.2d at 203. 
Further, if a trial court fails to comply with the rules governing motions for recusal, all
subsequent actions by the court in the case are void. Brosseau v. Ranzau, 28 S.W.3d
235, 238 (Tex. App.—Beaumont 2000, no pet.); Rio Grande Valley Gas Co., 987 S.W.2d
at 179. In contrast to these two circumstances, the erroneous denial of a recusal motion
does not void or nullify the presiding judge's subsequent acts, and the parties to a
proceeding may waive any ground for recusal after it has been fully disclosed on the
record. Tex. R. Civ. P. 18b(5); In re Union Pac. Res. Co., 969 S.W.2d 427, 428 (Tex.
1998). A harmless error analysis in this context properly considers each of the two
objectives of recusal: to provide the parties a fair trial (and appeal) and to promote
confidence in the judicial system. See Powell v. Anderson, 660 N.W.2d 107, 121 (Minn.
2003). And by using a risk analysis, it allows the balancing of those objectives against the
potential burdens placed on the judicial system and the parties by re-opening a final
judgment.
          Therefore, even if Judge Ramsay erred in denying the motion to recuse Judge
Pesek, we would apply a harmless error analysis and examine: (1) the risk of injustice to
the parties in the particular case; (2) the risk that denial of relief will produce injustice in
other cases; and (3) the risk of undermining the public's confidence in the judicial process. 
See Liljeberg, 486 U.S. at 864. Applying these standards, we conclude that any such error
would be harmless. 
          1.       The risk of injustice to the parties in this particular case
          The risk of injustice to the parties in this case is slight. We have already noted that
the meeting in Judge Peek's chambers was not ex parte, but was in the presence of all the
attorneys, so that whatever information Judge Pesek learned from that meeting was
subject to rebuttal. We have also discussed how that meeting concerned an administrative
matter, not a substantive issue on the merits of the case. 
          Finally, the motion for continuance that was the underlying basis for Mosley's motion
to recuse Judge Pesek was fatally defective and without merit. Articles 29.06 and 29.07
of the Texas Code of Criminal Procedure set forth the requirements for subsequent
motions for continuance by the defense. Article 29.07 provides as follows:
          Subsequent motions for continuance on the part of the defendant
shall, in addition to the requisites in the preceding Article, state also:
 
          1.       That the testimony cannot be procured from any other source
known to the defendant; and 
 
          2.       That the defendant has reasonable expectation of procuring
the same at the next term of the court.
 
Tex. Code Crim. Proc. Ann. art. 29.07 (Vernon 1989). 
          In addition to Article 29.07, subsequent motions for continuance must comply with
the provisions of Article 29.06, which, in relevant part, provides as follows:
          In the first motion by the defendant for a continuance, it shall be
necessary, if the same be on account of the absence of a witness, to state:

          1.       The name of the witness and his residence, if known, or that
his residence is not known.

          2.       The diligence which has been used to procure his attendance;
and it shall not be considered sufficient diligence to have caused to be
issued, or to have applied for, a subpoena, in cases where the law
authorized an attachment to issue.

          3.       The facts which are expected to be proved by the witness, and
it must appear to the court that they are material.
 
          4.       That the witness is not absent by the procurement or consent
of the defendant.
          5.       That the motion is not made for delay.
 
          6.       That there is no reasonable expectation that attendance of the
witness can be secured during the present term of court by a postponement
of the trial to some future day of said term.
 
Tex. Code Crim. Proc. Ann. art. 29.06 (Vernon 1989). 
            The State points out that Mosley's motion for continuance failed to meet the
requirements of Articles 29.06 and 29.07. The motion did not allege that the testimony
could not be procured from any other source known to the defendant, as required by Article
29.07(1). The motion did not allege Mosley had a reasonable expectation of procuring the
needed testimony at the next term of court, as specifically required by Article 29.07(2). 
Salinas v. State, 542 S.W.2d 864, 866 (Tex. Crim. App. 1976). The motion failed to state
the facts which were expected to be proved by the witness, or that such facts were
material. See Tex. Code Crim. Proc. Ann. art. 29.06(3). It failed to state the residence
of the unavailable witness or that the residence was unknown. See Gonzales v. State, 505
S.W.2d 819, 821 (Tex. Crim. App. 1974). Further, the motion did not state it was made for
a reason other than delay. Failure to include these allegations renders the motion fatally
defective and without merit. See, e.g., Baker v. State, 150 Tex. Crim. 191, 199 S.W.2d
1017, 1018 (1947); Williams v. State, 120 Tex. Crim. 288, 49 S.W.2d 772, 774 (1932);
Tucker v. State, 109 S.W.3d 517, 520–21 (Tex. App.—Tyler 1999, pet. ref'd); Branch v.
State, 774 S.W.2d 781, 787 (Tex. App.—El Paso 1989, pet. ref'd); Casterline v. State, 736
S.W.2d 207, 209–10 (Tex. App.—Corpus Christi 1987, pet. ref'd); Campbell v. State, 633
S.W.2d 592, 595 (Tex. App.—Amarillo 1982, pet. ref'd). 
          In addition, to establish that the trial court abused its discretion in denying a motion
for continuance, a defendant must show he or she was actually prejudiced by the denial
of the motion. Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). Mosley has
not set forth what his psychological expert would have testified to, how it was material to
the case, or how he was prejudiced by the trial court's denial of his motion. 
          The motion for continuance was defective and without merit. It follows that the
motion for new trial, to the extent it was based on the denial of the motion for continuance,
was also without merit. Mosley does not contend Judge Pesek's ruling was incorrect on
the merits or that another judge probably would have decided the motion for new trial
differently. Therefore, any injustice in having Judge Pesek decide the motion for new trial
was minimal. 
          2.       The risk that denial of relief will produce injustice in other cases
          With respect to the second factor, the United States Supreme Court concluded in
Liljeberg that vacating the judgment would help prevent injustice in other cases "by
encouraging a judge or litigant to more carefully examine possible grounds for
disqualification and to promptly disclose them when discovered." Liljeberg, 486 U.S. at
868. As noted above, the situation of this case was not one where any impropriety was
hidden from the parties. The possibility that vacating the judgment would help prevent
injustice in other cases is slight, at best. 
          3.       The risk of undermining public confidence in the judicial process 
          The risk of undermining public confidence in the judicial process also weighs in favor
of finding any error as harmless. Any appearance of impropriety from Judge Pesek relying
on Judge Peek to help decide the motion for continuance is not present where the advice
was contrary to his purported bias, i.e., for his son acting as defense counsel for Mosley. 
VII. CONCLUSION
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      July 1, 2004
Date Decided:         July 30, 2004

Publish